Shaun Setareh (SBN 204514)
        shaun@setarehlaw.com
Thomas Segal (SBN 222791)
        thomas@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Ste. 907
Beverly Hills, California  90212
Tel:     (310) 888-7771
Fax:     (310) 888-0109

Attorneys for Plaintiff,
MARCUS CHISM

# UNITED STATES DISTRICT COURT

# NORTHERN  DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS CHISM, on behalf of himself, all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>PEPSICO, INC., a North Carolina Corporation; FRITO-LAY, INC., a Delaware Corporation; FIRST ADVANTAGE BACKGROUND SERVICES CORP.,  a Florida Corporation; and DOES 1 to 100, Inclusive,<br><br>Defendants. | Case No. 3:17-cv-00152-VC<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH**<br><br>*Hearing Information*<br>Date:          April 26, 2018<br>Time:         10:00am<br>Courtroom:   4 17th Floor<br>Judge:       Vince Chhabria<br><br><br>*Submitted Under Separate Cover*<br>1.  Declaration of Shaun Setareh;<br>2.  [Proposed] Order |

1

**TABLE OF CONTENTS**

2  I.    INTRODUCTION..................................................................................1

3  II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY............................2

4        A.   Overview Of The Litigation...................................................2

5        B.   Summary of Relevant Law....................................................2

6             1.   The Fair Credit Reporting Act ("FCRA")....................................2

7             2.   The Ninth Circuit's Landmark Syed Decision..............................3

8             3.   The Investigative Consumer Reporting Agencies Act....................4

9        C.   The Disclosure Forms at Issue...............................................4

10       D.   The Disclosure Forms at Issue...............................................7

11       E.   Major Law and Motion Filings in Case......................................7

12       F.   The Parties Engaged in Arm's-Length Settlement Negotiations............8

13       G.   Material Terms of the Proposed Class Action Settlement....................8

14            1.   The Proposed Settlement Class.............................................8

15            2.   The Settlement Benefits....................................................9

16            3.   A Narrow Release...........................................................9

17            4.   A Consumer- Friendly Settlement Payment Distribution Process.......10

18            5.   The Proposed Notice to the Settlement Class............................10

19            6.   CAFA Notice................................................................11

20            7.   Proposed Attorney's Fees, Litigation Expenses, and Service

21                 Awards....................................................................11

22            8.   Implementation Schedule..................................................11

23 III.  ARGUMENT....................................................................................11

24       A.   The Court Should Grant Preliminary Approval of the Class Settlement.........11

25            1.   The Standard for Preliminary / Final Approval..........................11

26            2.   The Settlement Is Reasonable In Light of the Strengths and

27                 Weaknesses of Plaintiff's Case...........................................12

28

3. The Risk, Expense and Complexity of the Case, Including the Risk of Denial of Certification, Favor Approval of the Settlement ........................................................................15

4. The Amount Offered in Settlement Supports Approval.................18

5. The Settlement Was Finalized After a Thorough Investigation.........19

6. The Views of Experienced Counsel Should Be Accorded Substantial Weight..........................................................................20

7. The Presence of a Governmental Participant..............................21

8. The Reaction of the Class.....................................................21

B. Conditional Class Certification Is Appropriate for Settlement Purposes.........21

1. The Proposed Class Meets the Requirements of Rule 23..............21

2. The Proposed Class Is Sufficiently Numerous...........................21

3. There are Questions of Law and Fact that Are Common to the Class....................................................................................21

4. Plaintiff's Claims Are Typical of the Proposed Settlement Class........22

5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class....................................22

6. Common Issues Predominate Over Individual Issues....................23

7. Class Settlement Is Superior to Other Available Means of Resolution.............................................................................23

C. The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement.............................................24

IV. CONCLUSION..................................................................................25

# TABLE OF AUTHORITIES

*Aceves v. Autozone*, case no.

5:14-cv-02032 (c.d. Cal. 2016)...........................................................................................19

*Amchem Prods. V. Windsor*,

521 u.s. 591, 620 (1997)...........................................................................................21, 24

*Burnthorne-martinez v. Sephora usa, inc.*, n. District of california

Case no. 4:16-cv-02843-ygr...................................................................................19

*Cotter v. Lyft, inc.*,

193 f.supp.3d 1030, 1035(n.d. Cal. 2016)...............................................................12

*Eisen v. Porsche Cars North american, inc.*,

Case no. 11- 09405, 2014 u.s. Dist. Lexis 14301, 2014 wl 439006, at *13 (c.d. Cal. Jan. 30,

2014...........................................................................................................................20,21

*Espinoza v. Bluemercury, inc.*,

2017 wl 10799553 *3 (n.d. Cal. 2017)...................................................................17

*Garza v. Brinderson constructors, inc.*,

Northern District of California case no. 15-cv-05742-ejd...........................................19

*Jabbari v. Wells Fargo & Company*,

2017 wl 5157608 *1 (n.d. Cal. 2017)...................................................................17

*Lagos v. Leland Stanford Junior University*,

2017 wl 1113302 *4 (n.d. Cal. 2017)...................................................................18

*Lewis v. Southwest Airlines*,

2018 wl 400775 (n.d. Tex. 2018)...................................................................14

*Linney v. Cellular Alaska Partnership*,

(9th cir. 1998), 151 f.3d at 1239...................................................................19

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*,

2017 wl 2289342 (e.d. Cal. 2017):...................................................................21

*Miller v. Ceva Logistics USA Inc.*,

2015 wl 729638, *7 (n.d. Cal. 2015)...................................................................18

iii

1   *Morris v. Ernst & Young,*

2   834 f.3d 975 (9th cir. 2016)……………………………………………….…………………………….7

3   *Nat'l rural Telecommunications Coop. V. Directv, inc.,*

4   221 f.r.d. 523, 525-26 (c.d. Cal. 2004)…………………………………………………………………12

5   *Pac. Enters. Sec. Litig.,*

6   47 f.3d 373, 378 (9th cir. 1995)……………………………....……………………………20

7   *Parra v. Bashas,' inc.,*

8   536 f.3d 975, 978-79 (9th cir. 2008)…………………………………………………………………22

9   *Ramirez v. Trans Union LLC,*

10   2017 wl 5153280 (n.d. Cal. 2017)…………………………………....…………………15,22

11   *Rodriguez v. West Publishing Corp.,*

12   563 f.3d 948, 964 (9th cir. 2009)………………………………………....…………………18

13   *Rodriguez v. Hayes,*

14   591 f.3d 1105, 1124 (9th cir. 2010)…………………………………....….…………22

15   *Roe v. Frito-lay, inc.,*

16   4:14-cv-00751-hsg (n.d. Ca.)…………………………………………………….…………9

17   *Rohm v. Thumbtack, Inc.,*

18   2017 wl 4642409 (n.d. Cal. 2017)……………………………………………….…………19

19   *Safeco ins. Co. Of am. V. Burr,*

20   551 u.s. 47, 57-59 (2007)………………………………………………….…………………13

21   *Syed v. M-i, LLC,*

22   853 f.3d 492 (9th cir. 2017.)………………………………………....…………………3,14

23   *Toys 'r' us Facta litig.,*

24   295 f.r.d. 438, 451 (c.d. Cal. 2014.)…………………………………....…………………15

25   *Uber FCRA Litigation,*

26   2017 wl 2806698 (n.d. Cal. 2017)…………………………….....……....…………..19

27   *United States v. Menasche,*

28   348 u.s. 528, 538–39, 75 s.ct. 513, 99 l.ed. 615 (1955)……………………………....………..3

*Vasquez v. Coast valley Roofing, inc.,*

266 f.r.d. 482, 489 (e.d. Cal. 2010)……………………………………...……………..…….17,21

*Wal-mart stores, inc. V. Dukes,*

131 s. Ct. 2541, 2551 (2011)……………………………………………...…………………22

*Wilshire Westwood Assocs. V. Atl. Richfield corp.,*

881 f.2d 801, 804 (9th cir. 1989)……………………………….……………….…………….3


**STATUES**

15 U.S.C. § 1681…………………………………………………………...……...1,2,3,4,9,13,15

28 U.S.C. § 1715…………………………………………………………………………….……11

CALIFORNIA CIVIL CODE § 1785…………………………………………………...….9

CALIFORNIA CIVIL CODE § 1786…………………………………….……………4,9,17

CLASS ACTION FAIRNESS ACT. 28 U.S.C. § 1711…………………………………….11

FED. R. CIV. P. 23……………………………………………………………....11,12,21,22,23

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 26, 2018 at 10:00a.m., in Courtroom 4 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94012, the Honorable Vince Chhabria presiding, Plaintiff Marcus Chism ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 2 to the Declaration of Shaun Setareh;

(2) Approve distribution of the proposed Notice of Class Settlement to the Settlement Class;

(3) Appoint Plaintiff Marcus Chism as Class Representative;

(4) Appoint Setareh Law Group as Class Counsel;

(5) Appoint a claims administrator; and

(6) Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of  Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement;  (3) the Declaration Shaun Setareh; (4) the Settlement Agreement; (5) the Notice of Class Action Settlement, including Postcard Notice; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Respectfully submitted,

Dated:  April 12, 2018                             SETAREH LAW GROUP

BY   /s/ Shaun Setareh
Shaun Setareh
Attorneys for Plaintiff
MARCUS CHISM

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Marcus Chism ("Plaintiff") moves the Court to preliminarily approve a class action settlement ("Settlement Agreement") with Defendant Frito-Lay Inc. ("Frito-Lay" or "Defendant") that confers substantial relief in the form of a $2.4 million common fund representing statutory penalties to all Settlement Class Members. Class Members will not need to make claims but will be mailed checks directly. No money will revert to Defendant. Instead, after a second distribution to people who cashed their checks any residue from uncashed checks will go to a *cy pres* recipient. (The parties suggest United Way as the recipient).

The Settlement claims that Frito-Lay violated the Fair Credit Reporting Act ("FCRA") and related California law claims. Plaintiff alleges that Frito-Lay failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under State and Federal law. Instead, Plaintiff alleges that the disclosure forms used included impermissible extraneous information.

In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $2,400,000 is a good result for the class. The gross settlement amount of $62.87 and net settlement of at least $40 per class member compare favorably to recent FCRA settlements in the Northern District.

Under the Settlement, settlement class members will receive funds from the settlement, unless they choose to opt out. (Settlement Agreement ¶3(K)(6)). The parties estimate that there are approximately 38,174 putative class members. (Settlement Agreement ¶ 1(C)).

In order to arrive at this settlement, Plaintiff engaged in arms'-length negotiations with Frito-Lay, finally reaching an agreement following two mediation sessions.    At these two mediation sessions, the parties extensively discussed their views of the strengths and weaknesses of the case including the merits and the important procedural motions that were pending. (Setareh Decl. ¶¶ 9-11.) After the second mediation session, Mediator Michael Dickstein made a mediator's proposal which the parties accepted. (*Id.* ¶ 10.)

2

While the mediation process was ongoing, the parties fully briefed Defendant's Motion to Compel Arbitration (ECF No. 71) and Motion to Transfer Venue to the Eastern District of Texas (ECF No. 72).

In light of the risks of continuing with this litigation, Plaintiff submits that this proposed settlement, is fair, reasonable, and adequate.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Overview of the Litigation

On January 12, 2017 Plaintiff filed this case alleging violations of the Fair Credit Reporting Act ("FCRA"), the California Investigative Consumer Reporting Agencies Act and the California Consumer Reporting Agencies Act. The action alleges that Defendants conduct pre-employment background checks without complying with the requirements of those statutes, including the requirement of 15 U.S.C. § 1681b (b) (2)(A) that the background check be disclosed in a document that "consists solely of the disclosure."

### B. Summary of Relevant Law

#### 1.    The Fair Credit Reporting Act ("FCRA").

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to use certain documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 1681b of the FCRA, no person can obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure . . .in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i.) The person obtaining the consumer report must also obtain the consumer's written authorization which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii.)  A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . such

3

1  amount of punitive damages as the court may allow."

2      **2.   The Ninth Circuit's Landmark *Syed* Decision.**

3          In 2017, the Ninth Circuit issued a major decision on the issue of violation of the stand-

4  alone disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.)  In

5  *Syed*, the FCRA disclosure contained a term purporting to waive any liability of the employer

6  related to the background check. *Id.* at 498. The Ninth Circuit held that under the plain language

7  of the FCRA that the required disclosure must be in "a document that consists solely of the

8  disclosure," the inclusion of the liability release was impermissible: "We must begin with the

9  text of the statute. Where congressional intent has been expressed in reasonably plain terms, that

10 language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is

11 '[a]lone; singly' or entirely exclusively." *Id.* at 500. The Ninth Circuit also held that due to the

12 clarity of the statutory language requiring that the disclosure be in a document consisting

13 "solely" of the disclosure, "a prospective employer's violation of the FCRA is "willful" when

14 the employer includes terms in addition to the disclosure." *Id.* at 496.

15      While *Syed* involved a liability release, its holding is broader. *Syed* broadly analyzed

16 the "solely" requirement governing the disclosure apart from any release language:

17

18      "It is our duty to give effect, if possible, to every clause and word of a statute."
        *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615
19      (1955) (internal quotation marks omitted). M-I's interpretation fails to give
        effect to the term "solely," violating the precept that "statutes should not be
20      construed to make surplusage of any provision." *Wilshire Westwood Assocs. v.
        Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal
21      quotation marks omitted). ***That other FCRA provisions mandating disclosure
        omit the term "solely" is further evidence that Congress intended that term to***
22      ***carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i). See*** 15 U.S.C. §§ 1681d,
        1681s-3.      *Syed*, 853 F.3d at 501 (emphasis added).
23

24      Put in simplest terms, "solely" means just what it appears to mean and, in Plaintiff's

25 view, *no* implied exceptions to the "solely" requirement should be judicially added to the *one*

26 express exception allowing the authorization to accompany the correct disclosure.  The FCRA

27 expressly states that the *sole* additional element that may be included with the disclosure is an

28

4

authorization, "which authorization may be made on the document referred to in clause (i). . . ."

15 U.S.C.A. § 1681b(b)(2)(A)(ii).

### 3.      The Investigative Consumer Reporting Agencies Act.

Plaintiff also asserts a cause of action under California's Investigative Consumer Reporting Agencies Act. (ICRAA California Civil Code § 1786 *et seq*.) Under the ICRAA, an "'investigative consumer report' means a report in which information on a consumer's character, general reputation, personal characteristics or mode of living is obtained through any means." California Civil Code § 1786.2(c.) When an employer obtains an investigative consumer report, the employer must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure." California Civil Code § 1786.16(2)(B.)

### C.  The Disclosure Forms at Issue

The disclosure forms in effect during the class period are attached to the Declaration of Shaun Setareh as Exhibit 1. Plaintiff contends that all forms violate the stand-alone disclosure requirement for the following reasons:

As to FLI 000001, the form in use from November 12, 2015 to November 7, 2016, it contains the following extraneous information:

> - "I am willing that a photocopy of this authorization be accepted with the same authority as the original, and I specifically waive any written notice from any present or former employer who may provide information based upon this authorized request."

> - "I certify that the information on this Background Questionnaire is correct, and understand that falsification is ground for refusing employment or dismissal."

> -"I have been given a stand alone, consumer notification that  a report will be requested and used for the purpose of evaluating me for employment or retention as an employee."

Plaintiff contends that this is akin to a liability release in that it is exculpatory, effectively requiring the employee to agree that the stand alone disclosure requirement has been complied with. It is intended to have the same end result as a liability release; Frito-Lay will escape liability because of a document signed by the applicant.

5

- "I authorize the release of information to First Advantage, acting on behalf of Frito-Lay, Inc. as required by the U.S. Department of Transportation Federal Highway Administration."

- "By typing my signature below . . . I [applicant] agree that my electronic signature is the legally binding equivalent to my handwritten signature. Whenever I execute an electronic signature, it has the same validity and meaning as my handwritten signature. I will not, at any time in the future, repudiate the meaning of my electronic signature, or claim that my electronic signature is not legally binding. By signing below, I accept the conditions of this agreement."

-" If you would like to request an accommodation on the basis of a disability for completing this online application, please click here."

The online form also contains hyperlinks to various Frito-Lay marketing web pages including: "Our Snacks", "Recipes", "Your Health", "Our Planet", "About Us" "For Special Deals" and "Where to Buy." FLI 000001.

Similarly, as to FLI 000002-000011, in use from November 8, 2016 to January 12, 2017, the screens contain the following extraneous information:

"By clicking the "I ACKNOWLEDGE" box below, I hereby acknowledge that I have read, fully understand, and agree to the terms and conditions stated in this Background Check Disclosure."

Note that this is akin to a liability release in that it is exculpatory because the employer can argue that the employee is precluded from arguing that the disclosure was confusing.

-"I understand that I am not obligated to conduct business by electronic means, and I understand and agree to the use of this electronic method of signature to demonstrate my review, receipt and acceptance of the terms of this Background Check Disclosure."

-" If you would like to request an accommodation on the basis of a disability for completing this online application, please click here."

The online form also contains hyperlinks to various Frito-Lay marketing web pages including: "Our Snacks", "Recipes", "Your Health", "Our Planet", "About Us" "For Special Deals" and "Where to Buy." Additionally, the disclosure form contains state law notices, a copy of the New York Correction Law Article 23-A, and a notice regarding the San Francisco Fair Chance Ordinance.

As to FLI 000012-16, the background check disclosure form for salaried employees in effect from January 12, 2015 to December 15, 2016, Frito-Lay cannot argue that it is a *standalone* disclosure when the employee is required to certify that: "I understand this

authorization is to be part of the written employment application which I sign." It has the

following extraneous information and/ or terms:

    - A four page background questionnaire

    - "Location to conduct drug screen."

    - "I am willing that a photocopy of this authorization be accepted with the same authority as the original, and I specifically waive any written notice from any present or former employer who may provide information based upon this authorized request."

    -"I specifically waive any written notice from any present or former employer who may provide information based upon this signed request."

    -"I certify that the information on this Background Questionnaire is correct, and understand that falsification is grounds for refusing employment or dismissal."

    -"I have been given a stand alone consumer notification that a report will be requested and used for the purpose of evaluating me for employment or retention as an employee."

    As to FLI 0000017-22, the background check disclosure form for salaried employees in

effect from December 16, 2016 to January 12, 2017, it contains the following extraneous

information:

    - "By clicking the "I Consent, Authorize, Agree and Have Reviewed and Understood" button below, I hereby acknowledge that I have read, fully understand, and agree to the terms and conditions stated in the Background Check Disclosures form."

As explained above, this is an exculpatory clause, akin to a liability release.

    -"I understand that I am not obligated to conduct business by electronic means, and I understand and agree to the use of this electronic method of signature to demonstrate my receipt, review, and acceptance of the terms of this Background Check Disclosures form."

    - The FCRA Summary of Rights, a copy of New York Correction Law Article 23-A, a notice regarding the San Francisco Fair Chance Ordinance, California state law disclosures (whether or not applicant is a California resident).

    - "I have reviewed and understand the information, statements and notices in the Background Check Disclosure, the Additional Disclosures, and the California State Law Disclosures, as well as this Background Check Authorization."

    - "Except as otherwise prohibited by state law, I consent to and authorize the Company to share this information with Company's current or prospective clients, customers, others with a need to know, and/or their agents, (including but not limited to staffing/ placement company clients and vendor credentialing companies ) for business reasons (e.g., to place me in certain employment positions, jobs, work sites, etc."

As to FLI 000023, a paper form used from January 12, 2015 to January 12, 2017, it contains the following extraneous information:

- "I am willing that a photocopy of this authorization be accepted with the same authority as the original, and I specifically waive any written notice from any present or former employer who may provide information based on this authorized request."

- "I certify that the information on this Background Questionnaire is correct, and understand that falsification is grounds for refusing employment or dismissal."

-"I have been given a stand alone, consumer notification that a report will be requested and used for the purpose of evaluating me for employment or retention as an employee."

### D. Plaintiff's Investigation and Discovery

Prior to and throughout the action, Plaintiff and his counsel thoroughly investigated his claims. Specifically, Plaintiff propounded Interrogatories and Requests for Production of Documents. (Setareh Decl. ¶ 8).

As part of the investigation, Plaintiff's counsel reviewed documents produced by Frito-Lay in order to confirm which forms were used and by whom during the class period. Plaintiff's counsel also reviewed Frito-Lay's background check policies. (Setareh Decl. ¶ 6.) Because this case turns on Frito Lay's legal defense that Frito-Lay's noncompliance was purportedly not "willful" under the FCRA, Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly unlawful forms. (Setareh Decl. ¶ 7.)

Defendant contends that each of the above allegedly extraneous excerpts either (a) is separate from the disclosures and/or (b) a lawful part of the relevant disclosures screen(s)—and, therefore, lawful.

### E. Major Law and Motion Filings in Case

On September 26, 2017, Defendant Frito-Lay filed a motion to compel arbitration. (ECF No. 71.) In an order dated October 17, 2017, this Court directed Plaintiff in opposing the motion to address the applicability of *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016). On October 24, 2017, Plaintiff filed an Opposition arguing that the motion was

8

barred by *Morris*, that the arbitration provision at issue could not be applied retroactively (and that the alleged violations occurred before the provision was effective), that the provision was unconscionable, and that Defendant had waived the right to compel arbitration. (ECF No. 28.) Defendant filed a Reply Brief on November 14, 2017. (ECF No. 81).

On September 26, 2017, Defendant Frito-Lay filed a motion to transfer this case to the Eastern District of Texas because Frito-Lay is headquartered in Plano Texas. (ECF No. 72.) Plaintiff filed an Opposition on October 24, 2017 arguing that Defendants have multiple operations in California including the Bay Area and that the interest of justice did not support transfer. (ECF No. 79.) Defendant filed a Reply Brief on November 14, 2017. (ECF No. 80.)

**F.   The Parties Engaged in Arm's-Length Settlement Negotiations**

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  Following formal discovery, informal discovery and arm's-length negotiations, the parties reached a settlement in principle on a class basis.   The parties held two mediation sessions with mediator Michael Dickstein. The first was an all-day in person mediation in San Francisco on September 12, 2017. The second was an all-day mediation which the parties participated in by video-conference on November 16, 2017. (Setareh Decl.¶¶ 9-10.)

Between the first and second mediations, Defendant filed a motion to compel arbitration and a motion to transfer venue. ECF Nos. 71 and 72. Plaintiff opposed the motions. ECF Nos. 78 and 79. Defendant filed reply briefs on November 14, 2017, two days before the second mediation. The second mediation session resulted in a mediator's proposal which the parties accepted.

**G.   Material Terms of the Proposed Class Action Settlement**

**1.   The Proposed Settlement Class**

The Settlement Class consists of "all applicants for employment in the United States who applied for a job with Frito-Lay North America, Inc. and on whom background checks were conducted during the Covered Periods; [excluding] individuals who were members of a

9

separate class in a prior background check class action, *Roe v. Frito-Lay, Inc.,* 4:14-cv-00751-HSG (N.D. Ca.)" (Settlement Agreement ¶ 1(C.) The "Covered Periods" i.e. the class periods are: "(a) for [Frito-Lay] frontline non-exempt positions, the period from January 12, 2015 through November 7, 2016, and (b) for [Frito-Lay] salaried/ exempt positions, the period from January 12, 2015 through December 15, 2016." (Settlement Agreement ¶ 1(K.))    The approximate estimated number of class members is 38,174, as of the date of execution of the Settlement Agreement. (*Id*. ¶ 1 (C).

This Settlement Class differs from the classes pled in the operative complaint in that it has a two year statute of limitations rather than a five or seven year statute of limitations and has a definitive cut-off date. *Compare* SAC ¶ 12. As explained in the Declaration of Shaun Setareh, because of the potential impediment to class certification that a five year class would raise (a five year class would require inquiry into when class members discovered the alleged violation pursuant to 15 U.S.C. § 1681p(2)) the Settlement Class has a two year statute of limitations. (Setareh Decl. ¶ 26.) The end dates correspond to dates when Defendant introduced new forms for which Plaintiff's Counsel believe Defendant has strong arguments that the forms are legally compliant. (*Id*.)

### 2. The Settlement Benefits

Under the Settlement, all Class Members who do not opt out will receive an Individual Settlement Payment of at least $40 with a second distribution of the residue from uncashed checks. (Settlement Agreement ¶ 3(K)(c.)

### 3. A Narrow Release

Pursuant to the Settlement Agreement, Class Members release their claims as follows:

[A]ll claims alleged in the Complaint and any known or unknown claims that were or could  have been alleged based on the specific facts alleged in the Plaintiffs' Complaint (collectively, the "Released Claims").    This includes claims for (1) Violation of 15 U.S.C.§§  1681b(b)(2)(A) (Fair Credit Reporting Act); (2) Violation of 15 U.S.C. §§ 1681d(a)(1) and 1681g(c) (Fair Credit Reporting Act); (3) Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act); (4) Violation of California Civil Code § 1785 et seq. (Consumer Credit Reporting Agencies Act); (5) Violation of 15 U.S.C. §1681b(b)(1)(A) (Fair Credit Reporting Act).  Released Claims as

10

defined herein include any claims that were or could have been alleged based on the facts and/or legal theories addressed in the Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act and any state law analogues, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports obtained by FLI, and adverse action notification (including but not limited to any claims under the Fair Credit Reporting Act, the California Consumer Credit Reporting Agencies Act, the California Investigative Consumer Reporting Agencies Act, California Business & Professions Code section 17200, or any comparable provision of federal, state or local law alleging or arising out of adverse employment action),     whether such basis is known or unknown at the time the release is approved by       the Court.  The period of the Released Claims shall extend to the limits of the Covered     Periods.  The *res judicata* effect of the Final Order and Judgment will be the same as that       of the Released Claims.

(Settlement Agreement ¶ 1(Y.))

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint.

**4. A Consumer- Friendly Settlement Payment Distribution Process**

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members.  Class Members will not have to submit a claim form in order to receive payment. Instead, the Individual Settlement Payments will be mailed by First Class Mail to the Settlement Class Members. (Settlement Agreement ¶¶ 3(K)(6), 3(L)(2)(b.) Settlement Class Members will have 120 days to cash their settlement check. (*Id.*)   The residue from uncashed checks will then be re-mailed to Settlement Class Members who cashed the first checks distributed.  (Settlement Agreement ¶ 3(L)(2)(d).  Settlement Class Members who receive a second check will have 120 days to cash it. (*Id.*)

**5. The Proposed Notice to the Settlement Class**

Defendants shall send the Settlement Administrator the Class Data for each Class Member. (Settlement Agreement ¶ 3(K)(1.))

Prior to mailing the postcards, the Claims Administrator shall conduct a change of address search with the U.S. Postal Service to verify the mailing addresses of each Class Member. (Settlement Agreement ¶ 3(K)(2)(b)).

Within twenty eight (28) days after the Court has issued an order preliminary approving the settlement, the Claims Administrator will mail out to all Settlement Class Members the

11

Postcard Notice which will summarize the settlement and direct Class Members to the settlement website. (Settlement Agreement ¶¶ 3(K)(1) & (K)(2)).

### 6. CAFA Notice

The Settlement Agreement does not expressly address this issue. This action was filed as a class action in a district court under Federal Rule of Civil Procedure 23 and therefore falls within the definition of "class action" in the Class Action Fairness Act. 28 U.S.C. § 1711(2). Defendant has confirmed that it will send CAFA notice within 10 days of the date of this filing, as described in 28 U.S.C. § 1715.

### 7. Proposed Attorney's Fees, Litigation Expenses, and Service Awards

Plaintiff will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees in an amount not to exceed eight hundred thousand dollars ($800,000) and out-of-pocket costs incurred in this action in an amount not to exceed thirty-five thousand dollars ($35,000). (Settlement Agreement ¶ 3(L)(4)).

### 8. Implementation Schedule

An implementation schedule for the settlement including notice and final approval is included in the Proposed Order filed herewith. Plaintiff's Motion for Attorney Fees will be filed 14 days prior to the deadline for class members to object or request exclusion.

### III.   ARGUMENT

#### A.      The Court Should Grant Preliminary Approval of the Class Settlement

##### 1.      The Standard for Preliminary /Final Approval

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness,

adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

Pursuant to this Section 32 of this Court's Standing Order, Plaintiff asserts that the instant settlement is one which deserves final approval as "fair, reasonable and adequate." This Court has stated that it looks at the following factors: "(1) the strength of the plaintiff's case;(2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Cotter v. Lyft, Inc.,* 193 F.Supp.3d 1030, 1035(N.D. Cal. 2016). As set forth below, these factors support approval except for (7) which is neutral and (8) which cannot be addressed at this time.

### 2.    The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).

Here, Plaintiff alleges that Frito-Lay used forms that included both the disclosure form and extraneous information in one document. Plaintiff contends that this facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) *a clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

13

However, the analysis does not end there. The failure to provide a legally compliant disclosure form does not result in measurable economic damages. For example, if an employment applicant was offered a job after a background check, they have no economic damages. But even an applicant who loses a job because of a background check and who testifies that they did not know a check would be done would not be able to show economic damages. If they testify that they would have refused to allow a background check if the disclosure form had been clearer, they have no economic damages (since in that case they would not have obtained employment in any event). But conversely if they testify that they would have allowed the background check had they understood the disclosure form, in that case they also have no economic damages.

Thus, the viability of the case turns on the availability of statutory damages. In order to obtain statutory damages, Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the FCRA as a defense.

It should be noted that the opinion of the Ninth Circuit in *Syed* is very important in order to be able to establish willfulness. Defendant argued that *Syed* should be interpreted as establishing a *per se* rule of willfulness as to liability releases only, not the different types of allegedly extraneous information at issue in this case. For example, Defendant could be expected to focus on the following language in *Syed* which supports an argument that the holding is limited to liability releases: "[A] liability waiver . . . pulls the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights he most forego if he signs the document. Indeed, by reading M-I's Disclosure Release, a job applicant could reasonably conclude that his signature was not consent to the procurement of

14

the consumer report, but to a broad release airing from claims arising from the 'totality' of the "investigative background inquiries" referenced in the first sentence of the form." *Syed supra* at 502.

Plaintiff, of course, contends that the other language in *Syed* shows that its holding is not so limited, for example the statement that: "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id*. at 496. While Plaintiff strongly believes that his interpretation of *Syed* is correct, there is no way to be certain that this Court or a subsequent Ninth Circuit panel or even potentially the United States Supreme Court would agree.[1]

An example of what can happen in a case like this, where the disclosure form contains extraneous terms but not a *Syed* type liability release is a decision from the Northern District of Texas in *Lewis v. Southwest Airlines*, 2018 WL 400775 (N.D. Tex. 2018) (a case where the Plaintiff and the putative class are represented by the same counsel as here). In *Lewis, supra* at *4, the Texas federal district court applied *Syed* and found that certain extraneous terms in the disclosure form were unlawful: "The Court determines that the inclusion of the Acknowledgment and other extraneous information in the Consent Form violates the FCRA's stand-alone disclosure requirement." The district court nonetheless concluded that any violation was not willful because: "In 2015 (when the form was used) the district courts that had considered whether extraneous information in an FCRA disclosure constitutes a willful violation came to conflicting answers." Plaintiff contends that this analysis is erroneous because *Syed* instructs that the plain language of the statute shows that including extraneous information is unlawful, and that disregard of that language meets the willfulness test. Defendant argues to the contrary.

---

[1] The Supreme Court denied certiorari in *Syed* in a ruling that Justice Alito was recused from. *M-I, LLC v. Syed*, 138 S. Ct. 447. It is, of course, impossible to know why the Supreme Court denied certiorari and whether it might grant review in a subsequent case involving the willfulness issue.

Also important in analyzing the strengths and weaknesses of the case is the issue of how much a jury would likely award in statutory damages. The FCRA provides for statutory damages of between $100 and $1,000 per violation. 15 U.S.C. § 1681n(a)(1)(A). If there were a strong likelihood that a jury would award $1000 per violation (or close to it), then this settlement might not be viewed as a favorable one. But a recent jury verdict from the Northern District in an FCRA case illustrates the type of case where a jury would predictably award close to the $1000 per violation penalty. *Ramirez v. Trans Union LLC*, 2017 WL 5153280 (N.D. Cal. 2017)(Order denying Motion for New Trial). *Ramirez supra* at *1 involved an award of over $60 million in punitive and statutory damages in a case alleging violation of 15 U.S.C. 1681e(b) which requires credit reporting agencies to use "reasonable procedures to ensure "maximum possible accuracy" of the information they provide. The defendant Trans Union mistakenly identified the class members as being Specially Designated Nationals on the federal government's list of "terrorists, drug traffickers and others with whom Americans are prohibited from doing business." *Id.* In addition to punitive damages the jury awarded statutory damages of $984.22 per class member. *Id*. at *5. While Plaintiff strongly believes that Defendant did not comply with the law, and that it was willful under *Syed,* the conduct at issue here is not comparable in egregiousness to that at issue in *Ramirez*.

### 3.   The Risk, Expense and Complexity of the Case, Including the Risk of Denial of Certification, Favor Approval of the Settlement

The parties are fully aware of the risks and complexity of the case. While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery." *See e.g., Toys 'R' Us FACTA Litig*., 295 F.R.D. 438, 451 (C.D. Cal. 2014.). Further, given that there is potentially in excess of $38 million at issue (38,174 class members multiplied by $1,000), although an award in that amount might not be likely, the parties could be expected to expend considerable resources litigating the matter.

As set forth above, there is the risk that this Court, a transferor court, a jury, or a reviewing court would find that Frito-Lay's conduct was not willful. That risk is exacerbated by Frito-Lay's pending motion to transfer to the Eastern District of Texas. ECF No. 72. If the action were transferred to a district court outside the Ninth Circuit, the *Syed* decision, which is the most powerful authority Plaintiff has to demonstrate willfulness, no longer would be binding.

In support of transfer, Frito Lay argues, among other things, that the percipient witnesses would be located in Texas where it is headquartered. *Id.* at 2:6-7. Plaintiff argues, among other things, that the evidence shows that Frito-Lay has extensive operations in the Northern District, that its arbitration provision stipulates to a California venue (thereby rendering any argument that a California venue is not convenient dubious) and that because of the California state law claim, the Northern District has a stronger local interest in the controversy. *See generally* ECF No. 79. The outcome of that motion is unpredictable and the various factors leave a great deal of room for judicial discretion.

Similarly, Frito-Lay's motion to compel arbitration causes considerable risk. The outcome of that motion might be determined by the decision of the U.S. Supreme Court in *Morris v. Ernst & Young*, U.S. Supreme Court Case No. 16-300 in which oral argument was held on October 2, 2017 involving the enforceability of class action waivers in employment agreements. Plaintiff argued that *Morris* applies to this case because the concerted action right under the National Labor Relations Act is broad and applies to all kinds of employment related conditions. ECF No. 78 at 6:8-7:10. While Plaintiff believes he would prevail on the issue of the applicability of *Morris*, there is no way to know whether *Morris* will be affirmed.

Plaintiff also argues that the arbitration agreement cannot be applied retroactively and that because the background check was done before the arbitration agreement was executed it would be an impermissible retroactive application. ECF No. 78 at 13:18-14:18. Plaintiff also argued that the arbitration provision was procedurally and substantively unconscionable with multiple substantively unconscionable features including an effectively unilateral attorney fee

provision, provisions that operate to shorten the statute of limitations, and the ability for the defendant to obtain its attorney fees for moving to compel arbitration. *Id.* at 7:19-10:27. Frito-Lay addressed these issues extensively in its Reply Brief.

Of course, assuming that this Court denied the motion to compel arbitration, that decision would be appealable. 9 U.S.C. § 16(a)(1)(B). Such an appeal would further delay proceedings.

Plaintiff believes that assuming the motion to compel arbitration were denied, it is highly likely that a class would have been certified in this case given that the case turns on an analysis of the legality of disclosure forms. Since the case is based on a federal statute, a national class likely would be certified. However, the arbitration provision is a potential impediment to certification. Assuming that Plaintiff were to defeat the arbitration provision in his own case on state law grounds, Defendant would argue that varying state laws regarding unconscionability or contract formation defeat predominance. *See Jabbari v. Wells Fargo & Company,* 2017 WL 5157608 *1 (N.D. Cal. 2017)(J. Chhabria): "Although the Court has doubts about Wells Fargo's continued ability to enforce its adhesive arbitration agreements and class waivers . . . FCRA plaintiffs would face significant risk at the class certification stage even after denial of a motion to compel."

As to the California specific claims, there is a very high risk that class certification would be denied because the California statute expressly does not permit class actions for statutory damages. Cal. Civ. Code § 1786.50(a)(1); *see Espinoza v. Bluemercury, Inc.*, 2017 WL 10799553 *3 (N.D. Cal. 2017)(J. Tigar)(holding that in federal court in a Rule 23 class action, this state law limitation applies). Of course, all California class members have claims under the federal statute.

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal quotations omitted). Here, the Settlement delivers immediate

recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial.

### 4.    The Amount Offered in Settlement Supports Approval

Defendant is paying $2,400,000 to settle this case.  The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake. There are no measurable economic damages, only potential statutory damages. The FCRA's damages provision limits recovery in willful situations to between $100 and $1,000 or actual damages, whichever is greater. With approximately 38,174 class members, the FCRA statutory damages i.e., the core claims in the Action, are between $3,817,400 to $38,174,000. It is reasonable to assume that a jury in this case would enter an award at the lower end of the potential $100 to $1000 range per violation and that a $38 million verdict, while permissible under the plain language of the statute, would be highly unlikely. As set forth above, the *Ramirez* case involving allegations that the defendant credit agency falsely labeled class members as drug traffickers and terrorists is likely typical of the kind of case where statutory damages would approach $1000.

A recent decision from the Northern District evaluating whether to approve the settlement in a similar stand-alone disclosure case used the $100 per violation penalty as the comparator to judge the fairness of the settlement. *Lagos v. Leland Stanford Junior University*, 2017 WL 1113302 *4 (N.D. Cal. 2017). Based on that comparator, the gross settlement amount is 63% of the potential award at trial. The settlement provides that the minimum check sent to class members is $40.00. Therefore the actual class member recovery (net of attorney fees and expenses as well as administration costs) will be 40% of the potential recovery.

The total settlement amount is $2.4 million for a class of approximately 38,000 class members. Class members do not need to make a claim but instead will be mailed a check directly. The gross settlement amount is over $60 per class member, and the net settlement amount is at least $40 per class member. These compare, often favorably, with other settlements. *See, e.g., Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval; claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement--$3.30 gross and approximately $41.39 net per class member); *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval; claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or $7.31 gross per class member); *Aceves v. AutoZone*, Case No. 5:14-CV-02032 (C.D. Cal. 2016)  (granting final approval; 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and approximately $20 net per class member).

Plaintiff's counsel has obtained similar FCRA settlements in at least two other settlements where preliminary approval has been granted. For example, in *Burnthorne-Martinez v. Sephora USA, Inc.*, Northern District of California Case No. 4:16-cv-02843-YGR (preliminary approval granted January 8, 2018) the settlement amount was $750,000 for 11,429 class members or $65.60--a similar gross settlement amount to the instant one. (Setareh Decl. ¶ 21.) Similarly, in *Garza v. Brinderson Constructors, Inc.*, Northern District of California Case No. 15-cv-05742-EJD (preliminary approval granted March 22, 2018) the settlement amount was 1.5 million with approximately 12818 class members or $117.02 per class members. (*Id.* ¶ 22.) In the *Sephora* and *Brinderson* cases, however, there was no arbitration provision and some of the forms at issue contained *Syed* type liability releases. (Setareh Decl. ¶ 24.)

### 5.    The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska Partnership,* (9th Cir. 1998), 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient

investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014.)

Plaintiff engaged in extensive investigation and discovery. (*See* Setareh Decl ¶¶ 4-8.) Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate.

**6.    The Views of Experienced Counsel Should Be Accorded Substantial Weight**

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, the parties achieved a settlement after a thorough review of relevant documents and information, as well as an analysis of the parties' claims and defenses.  The expectations of all parties are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-length negotiations. Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters. (*See* Setareh Decl. ¶¶ 16-17.) In fact Plaintiff's counsel has litigated a number of FCRA class actions involving claims of disclosure forms that violate the stand-alone disclosure requirement. Three of those cases were settled on a class-wide basis after class certification was fully briefed. (Setareh Decl. ¶¶ 21-23.) Plaintiff's counsel has several FCRA stand-alone disclosure cases where summary judgment was granted in the defendant's favor including two such decisions after *Syed*. (Setareh Decl. ¶ 25.) As such, Plaintiff's counsel is in a good position to evaluate the likelihood of success and the settlement value of the case.  Likewise, Frito-Lay's counsel, Ogletree Deakins, is a nationally recognized labor & employment defense firm which has handled FCRA class actions. Thus, the parties' recommendation to approve this Settlement should "be given great weight."

*Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

### 7.    The Presence of a Governmental Participant

There is no governmental participant in this case. Therefore, this factor is neutral. *E.g., Mitchinson v. Love's Travel Stops & Country Stores, Inc.,* 2017 WL 2289342 (E.D. Cal. 2017): "Because there are no separate governmental participants involved in the action, this factor is neutral . . . ."

### 8.    The Reaction of the Class

As notice has not gone out, it is premature to address this factor at this point.

### B.    Conditional Class Certification Is Appropriate for Settlement Purposes

#### 1.    The Proposed Class Meets the Requirements of Rule 23

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

#### 2.    The Proposed Class Is Sufficiently Numerous

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).   Here, Defendant estimates that there are 38,174 Settlement Class Members, satisfying the numerosity requirement.

#### 3.    There are Questions of Law and Fact that Are Common to the Class

The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion

for commonality is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019-1020.

Here, each Class Member executed an authorization form disclosing the employer's intent to obtain a background check on a current or prospective employee that contains allegedly extraneous information. One single common question resolves the dispute: whether Frito Lay willfully violated the law by using these forms. Accordingly, the Court should find commonality. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D. Cal. 2014) (finding commonality on a contested certification motion where one common question resolves the issue of whether a defendant violated the FCRA by failing to include certain mandated information in the disclosure form).

### 4. Plaintiff's Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)). "

Here, Plaintiff asserts that Settlement Class Members' claims arising from Frito-Lay's alleged unlawful use of the disclosure forms are reasonably co-extensive with the legal claims asserted by Plaintiff. Each Settlement Class Member's claims arise from the same underlying conduct—namely, Frito-Lay's failure to use a disclosure form free of extraneous language, in contravention of the FCRA's requirement for a disclosure form "consisting solely of the disclosure. Plaintiff's claims are thus typical of the Class.

### 5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class

Adequacy is satisfied, because "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). Adequacy will be found if (1) the proposed representative plaintiff does not have conflicts of interest with the proposed class, and

(2) the plaintiff is represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff is adequate since he has no conflict of interest with the proposed Class. He also understands and accepts his responsibilities as a class representative. (Chism Decl. ¶ 3, ¶¶5-6.) In addition, Plaintiff is represented by competent counsel with deep experience in litigating class actions, who do not have a conflict of interest with the class. (*See* Setareh Decl.¶¶ 18-23.) Thus, Plaintiff satisfies the adequacy prong.

### 6. Common Issues Predominate Over Individual Issues

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022.  Here, the proposed Class is maintainable under Rule 23(b)(3), as common questions predominate over any question affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. *Id*. (citing Fed. R. Civ. P. 23(b)(3)).

Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Settlement Class Members based solely on easily ascertainable criteria, bypassing the purported individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Further, the overarching issue is the legality of the disclosure forms at issue, including whether they contain extraneous information, and whether that is willful under *Syed*.

### 7.    Class Settlement Is Superior to Other Available Means of Resolution

Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

Furthermore, manageability at trial is not a concern in the class action settlement context, "for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Additionally, although the benefits of the Settlement negotiated on behalf of the Class are significant, the amount of penalties ranging from $100 to $1,000, is not nearly enough to incentivize individual class members into action.

**C.   The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement**

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The parties have agreed on a notice plan that satisfies the requirements of Rule 23. (Settlement Agreement ¶3K.)  Under this plan, a claims administrator will mail a postcard to all Settlement Class Members as identified in Frito-Lay's files. The postcard will summarize the terms of the settlement and refer Class Members to the website for the Class Notice and Request for Exclusion. The Settlement Notice, attached as Exhibit A to the Settlement Agreement, includes all the content required by Rule 23(c)(2)(B), including a description of the action and Class claims, as well as the Settlement Class Members' right to opt out of, object to, or comment on the proposed Settlement, and any application for attorneys' fees, costs, and service awards.

**IV.   CONCLUSION**

The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to the class as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee and expense application.

Respectfully submitted,

*Chism v. Pepsico, Inc.*                                         Notice of Motion and Motion for Preliminary
                                                                 Approval of Class Action Settlement

SETAREH LAW GROUP

Dated: April 12, 2018            BY____*/s/ Shaun Setareh*_____
                                      SHAUN SETAREH
                                      Attorneys for Plaintiff
                                      MARCUS CHISM

*Chism v. Pepsico, Inc.*                    Notice of Motion and Motion for Preliminary
                                            Approval of Class Action Settlement