Shaun Setareh (SBN 204514)
    shaun@setarehlaw.com
Thomas Segal (SBN 222791)
    thomas@setarehlaw.com
**SETAREH LAW GROUP**
9454 Wilshire Boulevard, Ste. 907
Beverly Hills, California 90212
Tel:     (310) 888-7771
Fax:     (310) 888-0109

Attorneys for Plaintiff,
MARCUS CHISM

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS CHISM, on behalf of himself, all others similarly situated, <br><br>                    Plaintiffs, <br><br>         v. <br><br> PEPSICO, INC., a North Carolina Corporation; FRITO-LAY, INC., a Delaware Corporation; FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida Corporation; and DOES 1 to 100, Inclusive, <br><br> Defendants. | Case No. 3:17-cv-00152-VC <br><br> **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARD OF ATTORNEY FEES AND EXPENSES; CLASS REPRESENTATIVE SERVICE AWARD; AWARD OF SETTLEMENT ADMINISTRATOR EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SHAUN SETAREH** <br><br>                ***HearinM Information*** <br> Date:              September 6, 2018 <br> Time:             10:00am <br> Courtroom:    4, 17th Floor <br> Judge:          Vince Chhabria <br><br>       ***Submitted Under Separate Cover*** <br> 1.  Declaration of Shaun Setareh; <br> 2.  Declaration of Marcus Chism; <br> 3.  Declaration of Orlando Castillejos <br> 4.  [Proposed] Order |

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

  PLEASE TAKE NOTICE that, on September 6, 2018 at 10:00a.m., in Courtroom 4 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94012, the Honorable Vince Chhabria presiding, Plaintiff Marcus Chism ("Plaintiff"), on behalf of himself and all others similarly situated, will, and hereby does, move this Court to:

(1) Grant final approval of the Settlement;

(2) Award attorney fees in the amount of $800,000;

(3) Award litigation expenses in the amount of $25,308.53;

(4) Award a class representative service payment in the amount of $5,000;

(5) Approve settlement administration expenses in the amount of $110,000.

        Respectfully submitted,

Dated: July 9, 2018       SETAREH LAW GROUP

        BY */s/ Shaun Setareh*
          Shaun Setareh
          Attorneys for Plaintiff
          MARCUS CHISM

## <u>TABLE OF CONTENTS</u>

**I. INTRODUCTION** 1

**II. STATEMENT OF FACTS AND PROCEDURAL HISTORY** 2

    **A. Overview of the Litigation** 2

    **B.  Summary of Relevant Law** 2

        1.  The Fair Credit Reporting Act ("FCRA") 2

        2.  The Ninth Circuit's Landmark *Syed* Decision 3

        3.  The Investigative Consumer Reporting Agencies Act 4

    **C.  The Disclosure Forms at Issue** 4

    **D. Plaintiffs Investigation and Discovery** 4

    **E.  Major Law and Motion Filings in Case** 5

    **F.  The Parties Engaged in Arm's-Length Settlement Negotiation** 5

    **G. Material Terms of the Proposed Class Action Settlement** 5

        1.  The Proposed Settlement Class 6

        2.  The Settlement Benefits ...6

        3.  A Narrow Release 7

        4.  A Consumer-Friendly Settlement Payment Distribution Process 7

        5.  No Reversion to Defendant .8

    **H. Notice to the Settlement Class and the Class Response** .8

**III. ARGUMENT** 8

    **A. The Court Should Grant Final Approval of the Class Settlement** ...8

        1.  The Standard for Final Approval Has Been Met 8

        2.  The Settlement Is Reasonable In Light of the Strengths and
           Weaknesses of Plaintiffs Case 8

        3.  The Risk, Expense and Complexity of the Case, Favor Approval
           of the Settlement .11

        4.  The Risk of Maintaining Class Status Through Trial Favors
           Approval of the Settlement 13

5.   The Amount Offered in Settlement Supports Approval                      14

6.   The Settlement Was Finalized After a Thorough Investigation....     16

7.   The Views of Experienced Counsel Should Be Accorded Substantial

Weight                                                                                            16

8.   The Presence or Absence of a Governmental Participant           ...17

9.   The Reaction of the Class is Overwhelmingly Positive                   17

B.   Conditional Class Certification Is Appropriate for Settlement

Purposes                                                                                        ..17

C.   The Court Should Award The Requested Attorney Fees, Expenses,

Settlement Administrator Expenses and Class Representative Service

Award                                                                                            17

1. The Requested Fee Award Is Reasonable                                       17

a) Applicable Law Regarding Attorneys' Fees                              17

i)        The Court Should Award Attorneys' Fees in

the Amount of One Third of the Common Fund       ...20

ii)       A Lodestar Analysis Also Supports The Requested Fee ...21

2. Plaintiffs Litigation Expenses Should be Reimbursed                    .23

3.   The Settlement Administrator's Expenses Should Be Approved     24

4.   The Court Should Approve An Incentive Award in The Amount

of $5,000                                                                                        24

W. CONCLUSION                                                                                24

# TABLE OF AUTHORITIES

Cases

*Bahry v. Montage Marketing LLC*
    2011 WL 181408 *4 (D. Nev. 2011)                                           13

*Barbosa v. Cargill Meat Solutions, Inc.*
    297 F.R.D. 34, 454 (E.D Cal/ 2013)                                     20, 21

*Beaver v. Tarsadia Hotels*
    No. 11-cv-01842-GPC-KSC, 2017 WL 4310707,
    at *13 (S.D. Cal. Sept. 28, 2017)                                         21

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245, 264 (N.D. Cal. 2014)                                     .22

*Boyd v. Bechtel Corp.,*
    (N.D. Cal. 1979) 485 F. Supp. 610, 624                                    20

*Burden v. SelectQuote Ins. Servs.*
    No. C 10-5966 LB, 2013 WL 3988771, at *4 (N.D. Cal. Aug. 2, 2013)         19

*Cotter v. Lyft, Inc.*
    193 F.Supp.3d 1030, 1035 (N.D. Cal. 2016)                                 20

*Deaver v. Compass Bank*
    No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015)      20

*Demmings v. KKW Trucking, Inc.*
    2017 WL 1170856 at *10 (D. Or. Mar. 29, 2017)                         10, 11

*Di Giacomo v. Plains All Am. Pipeline*
    *Nos.* 99-4137 & 99-4212, 2001 WL 34633373, at *10-11
    (S.D. Fla. Dec. 19, 2001)                                                 23

*Eisen v. Porsche Cars North American, Inc.*
    (C.D. Cal. Jan. 30, 2014) Case No. 11- 09405, 2014 U.S. Dist. LEXIS
    14301, 2014 WL 439006, at *13                                         16, 17

*Epic Systems Corporation v. Lewis*
    138 S.Ct. 612 (May 21, 2018)                                              .1

*Espinoza v. Bluemercury, Inc.*
    2017 WL 10799553 *3 (N.D. Cal. 2017)(J. Tigar)                            14

*Feist v. Petco Animal Supplies, Inc.*
    2018 WL 2933485 (S.D. Cal. 2018)                                         .15

*Garcia v. Comcast Cable Comunications Management LLC*
    2017 WL 1210044 *2 (N.D. Cal. 2017)                                       12

*Graham v. DaimlerChrysler Corp.*
    34 Cal. 4th 553, 580 (2004)                                               21

*Holloway v. Best Buy Co.,*
    C-05-5056-PJH (MEJ) (N.D. Cal.)                                          .22

*Hopkins v. Stryker Sales Corp.,* No. 11-CV-02786- LHK, 2013 WL 496358,
    at *5 (N.D. Cal. Feb. 6, 2013)                                           .22

*In re Apple Inc. Secs. Litig.,*
    No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16
    (N.D. Cal. May 17, 2011)                                                  22

*In re Aremissoft Corp. Sec. Litig.*
  210 F.R.D. 109, 134-35 (D.N.J. 2002)                                   .23
*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935, 941 (9th Cir. 2011.)                                     17, 18
*In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*
  No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014)     22
*In re Heritage Bond Litig.*
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15
  (C.D. Cal. June 10, 2005)                                              18
*In re HP Laser Printer Litig.,*
  2011 WL 3861703 at 5-6 (C.D. Cal. filed Aug. 31, 2011)                 22
*In re Pac. Enters. Sec. Litig.*
  (9th Cir. 1995) 47 F.3d 373, 378                                       16
*In re Portal Software Inc. Sec. Litig.*
  (N.D. Cal. Nov. 26, 2007) No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS
  88886, *3                                                              13
*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  2013 WL 1365900, at *9                                                 ...22
*In re Toys 'R' Us-Del., Inc. FACTA Litig.,*
  (C.D. Cal. 2014) 295 F.R.D. 438, 451, 453-54                           .11
*In re Uber FCRA Litigation*
  2018 WL 2047362 (N.D. Cal. May 2, 2018)                                15
*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
  19 F.3d at 1299                                                        21
*Jabbari v. Wells Fargo & Company*
  2017 WL 5157608 *1 (N.D. Cal. 2017)(J. Chhabria)                       14
*Johnson v. General Mills, Inc.,*
  2013 WL 3213832 *6 (C.D. Cal. 2013.)                                   23
*Kearney v. American Honda Motor Am.*
  2013 U.S. Dist. LEXIS 91636 *24                                        22
*Lane v. Facebook, Inc.*
  (N.D. Cal. Mar. 17, 2010) No. 08-3845-RS, 2010 U.S. Dist.
  LEXIS 24762, *4                                                        .....12
*Lee v. JPMorgan Chase & Co.,*
  Case No. 13-cv-511- JLS, 2015 WL 12711659, at *8-9
  (C.D. Cal. Apr. 28, 2015)                                              20
*Leland v. Lagos Stanford Junior University*
  2017 WL 113302 *4 (N.D. Cal. 2017.)                                    ..15
*Lewis v. Southwest Airlines*
  2018 WL 400775 *4 (N.D. Tex. January 11, 2018)                         .....11
*Linney v. Cellular Alaska Partnership*
  (9th Cir. 1998)151 F. 3d1234, 1239, 1242                               16
*Long v Tommy Hilfiger U.S.A.*
  (3d Cir. 2012) 671 F.3d 371                                            10
*Maley v. Del Global Techs. Corp.*
  186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002)                               23

*Manuel v. Wells Fargo Bank*
    N.A., 3:14-cv-00238, ECF No. 95 at 24 (E.D. Va Aug. 19, 2015)....        13
*Mathein v. Pier 1 Imports (U.S.) Inc.*
    2018 WL 1993727 *8 (E.D. Cal. April 27, 2018)        17
*Marquez v. Bank of America*
    2018 WL 1948864 *5 (N.D. Cal. 2018)        10
*Milbourne v. JRK Residential Am., LLC*
    *No.* 3:12CV861, 2014 WL 5529731 (E.D. Va. Oct. 31, 2014)        13, 14
*Miller v. CEVA Logistics USA Inc.*
    2015 WL 729638, *7 (N.D. Cal. 2015)        14
*Milliron v. T-Mobile USA, Inc.*
    423 F. App'x 131, 135 (3d Cir. 2011)        22, 23
*Morris v. Ernst & Young*
    834 F.3d 975 (9th Cir. 2016)        1
*Morse v. ServiceMaster Global Holdings, Inc.*
    2012 WL 4755035 *5 (N.D. Cal. 2012)        ..12
*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*
    (C.D. Cal. 2004) 221 F.R.D. 523, 525-527        9
*Nyulassy v. Lockheed Martin Corp.*
    120 Cal.App.4[th]  1267, 1282 (2004)        12, 13
*Officers for Justice v. Civil Serv. Comm 'n*
    (9th Cir. 1982) 688 F.2d 615, 625        9
*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268, 271 (9th Cir. 1989)        .18
*Perfect 10 v. Giganews Inc.,*
    2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015)        22
*Pierce v. County of Orange*
    905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012)        22
*Poinsignon v. Imperva, Inc.*
    2018 WL 1709942 *4 (N.D. Cal. April 4, 2018)        10
*Pokorny*
    2013 WL 3790896, at *2        22
*Ramirez v. Trans Union, LLC*
    (N.D. Cal. 2014) 301 F.R.D. 408, 417-418        15
*Reardon v. ClosetMaid*
    2011 WL 1628041, *6 (W.D. Penn. April 27, 2011)        ..13
*Robins v. Spokeo, Inc.*
    (2016) 742 F.3d 409        ..11
*Rodriguez v. West Publishing Corp.*
    (9th Cir. 2000) 563 F.3d 948        .12, 14
*Rohm v. Thumbtack Inc.*
    2017 WL 4642409 (N.D. Cal. October 17, 2017)        15
*Rutti,*
    2012 WL 3151077 at 11        22
*Safeco Ins. Co. of Am. v.Burr*
    (2007) 551 U.S. 47, 57-59        .9

*Shlahtichman v 1-800 Contacts, Inc.*
(7th Cir. 2010) 615 F.3d 794 — 10

*Smith v. CheckAmerica, Inc.*
2017 WL 3610592 (C.D. Cal. July 18, 2017) — .15

*Sobel v. Hertz Corp.*
No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at *10
(D. Nev. Oct. 9, 2014) — 23

*Spokeo Inc. v. Roberts,*
136 S.Ct. 1540 (2016) — .10

*Staton v. Boeing Co.*
327 F.3d 938, 967 (9th Cir. 2003.) — 18

*Stuart v. RadioShack Corp.*
No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16
(N.D. Cal. Aug. 9, 2010) — 22

*Syed v. M-I LLC*
(E.D. Cal. Oct. 22, 2014) No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS
150748, **8- 10 — 3, 10

*Torres v. Pet Extreme*
(E.D. Cal. Jan. 15, 2015) No. 13-01778-110, 2015 U.S. Dist. LEXIS 5136,
*13 — ...12

*Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v.*
*Redland Ins. Co.,* 460 F.3d 1253, 1258 (9th Cir. 2006.) — 23

*Vasquez v. Coast Valley Roofing, Inc.*
(E.D. Cal. 2010) 266 F.R.D. 482, 489 — 13

*Vizcaino v. Microsoft Corp.*
290 F.3d 1043, 1050 (9th Cir. 2002) — 18

*Wang v. Chinese Daily News, Inc.,*
2008 U.S. Dist. LEXIS 123824 at 8-9 (C.D. Cal. filed Oct. 3, 2008) — .22

*Woods v. Caremark, LLC*
2016 WL 6908108 (W.D. Mo. 2016) — 11

*Willes v State Farm Fire & Cas. Co.*
(9th Cir. 2008) 512 F.3d 565, 566 — 9, 10

*Wisely v. Amazon.com, Inc.*
709 Fed.Appx. 862 *864 (9th Cir. 2017) — .12

**Statutes**

15 U.S.C. §§ 1681 — 1-4, 7, 9, 10, 15

California Civil Code § 1786 — 4,  7, 14

Fed. R. Civ. P. 23 — 8, 14

ICRAA California Civil Code § 1786 *et seq.* — 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This lawsuit asserts that Frito-Lay violated the Fair Credit Reporting Act ("FCRA") and related California law claims. Plaintiff alleges that Frito-Lay failed to provide applicants with a stand-alone document that consists *solely* of the disclosure, as required under State and Federal law. Instead, Plaintiff alleges that the disclosure forms used included impermissible extraneous information.

This Court granted preliminary approval to the settlement of this action on May 14, 2018. ECF No. 94. Notice has gone out to the class by First Class Mail and email. The settlement website allows class members to object and opt out online  To date there are zero objections and only three requests for exclusion.

The settlement provides substantial relief in the form of a $2 4 million common fund representing statutory penalties to all Settlement Class Members. Class Members will not need to make claims but will be mailed checks directly. No money will revert to Defendant. Instead, after a second distribution to people who cashed their checks any residue from uncashed checks will go to a *cy pres* recipient which is proposed to be United Way.

In an FCRA case, a prevailing plaintiff will receive statutory damages of between $100 and $1,000. 15 U.S.C. § 1681n(a)(1)(A.) The settlement amount of $2,400,000 is a good result for the class. The gross settlement amount of $62.87 and net settlement payment of at least $40 per class member compares favorably to recent FCRA settlements.

The settlement is an excellent result. It was obtained in the face of a pending motion to compel arbitration. The risk of that motion was underscored by the U.S. Supreme Court's subsequent decision in *Epic Systems Corporation v. Lewis*, 138 S.Ct. 612 (May 21, 2018). That decision reversed the Ninth Circuit's holding in *Morris v. Ernst & Young*, 834 F.3d 975  (9th Cir. 2016) (which had held that class action waivers in employment agreements are invalid under the National Labor Relations Act). Further, the underlying legal claims under the FCRA involve substantial risk because of the uncertain and evolving legal landscape regarding such

claims. Class counsel has obtained a certain recovery for the class in face of great risk and uncertainty.

Accordingly, the Court should grant final approval to the settlement and also should award the requested attorney fees, expenses, class representative service award and settlement administrator expenses.

## II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.  Overview of the Litigation

On January 12, 2017 Plaintiff filed this case alleging violations of the Fair Credit Reporting Act ("FCRA"), the California Investigative Consumer Reporting Agencies Act and the California Consumer Reporting Agencies Act. The action alleges that Defendants conduct pre-employment background checks without complying with the requirements of those statutes, including the requirement of 15 U.S.C. § 1681b (b) (2)(A) that the background check be disclosed in a document that "consists solely of the disclosure."

### B.  Summary of Relevant Law

### 1.      The Fair Credit Reporting Act ("FCRA")

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 168 lb(b), requires employers to use certain documents and to follow specified policies and practices when they use "consumer reports" to assess the qualifications of prospective and current employees.

Pursuant to section 168 lb of the FCRA, no person can obtain a consumer report for employment purposes without providing a "clear and conspicuous disclosure . . .in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i.) The person obtaining the consumer report must also obtain the consumer's written authorization which can be done as part of the disclosure form. 15 U.S.C. § 1681b(b)(2)(A)(ii.)   A plaintiff may be entitled to statutory and punitive damages when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less than $100 and not more than $1000 . . . such amount of punitive damages as the court may allow."

2.        **The Ninth Circuit's Landmark** *Syed* **Decision**

In 2017, the Ninth Circuit issued a major decision on the issue of violation of the stand-alone disclosure requirement of the FCRA. *Syed v. M-I, LLC,* 853 F.3d 492 (9th Cir. 2017.)  In *Syed,* the FCRA disclosure contained a term purporting to waive any liability of the employer related to the background check. *Id.* at 498. The Ninth Circuit held that under the plain language of the FCRA that the required disclosure must be in "a document that consists solely of the disclosure," the inclusion of the liability release was impermissible: "We must begin with the text of the statute. Where congressional intent has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive . . . . The ordinary meaning of 'solely' is `[a]lone; singly' or entirely exclusively." *Id.* at 500. The Ninth Circuit also held that due to the clarity of the statutory language requiring that the disclosure be in a document consisting "solely" of the disclosure, "a prospective employer's violation of the FCRA is "willful" when the employer includes terms in addition to the disclosure." *Id.* at 496.

While *Syed* involved a liability release, its holding is broader.  *Syed* broadly analyzed the "solely" requirement governing the disclosure apart from any release language:

> "It is our duty to give effect, if possible, to every clause and word of a statute." *United States v. Menasche,* 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal quotation marks omitted). M-I's interpretation fails to give effect to the term "solely," violating the precept that "statutes should not be construed to make surplusage of any provision." *Wilshire Westwood Assocs. v. All. Richfield Corp.,* 881 F.2d 801, 804 (9th Cir. 1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions mandating disclosure omit the term "solely" is further evidence that Congress intended that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(4)(i). See 15 U.S.C. §§*** 1681d, 1681s-3.

*Syed,* 853 F.3d at 501 (emphasis added).

Put in simplest terms, "solely" means just what it appears to mean and, in Plaintiff's view, *no* implied exceptions to the "solely" requirement should be judicially added to the *one* express exception allowing the authorization to accompany the correct disclosure.  The FCRA expressly states that the *sole* additional element that may be included with the disclosure is an

authorization, "which authorization may be made on the document referred to in clause (i). . . ." 15 U.S.C.A. § 1681b(b)(2)(A)(ii).

### 3.    The Investigative Consumer Reporting Agencies Act

Plaintiff also asserts a cause of action under California's Investigative Consumer Reporting Agencies Act. (ICRAA California Civil Code § 1786 *et seq.)* Under the ICRAA, an "'investigative consumer report' means a report in which information on a consumer's character, general reputation, personal characteristics or mode of living is obtained through any means." California Civil Code § 1786.2(c.) When an employer obtains an investigative consumer report, the employer must provide "a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure." California Civil Code § 1786.16(2)(B.)

### C. The Disclosure Forms at Issue

The disclosure forms at issue and why Plaintiff believes they violate the standalone disclosure requirement were discussed at length in the motion for preliminary approval. ECF No. 88 at 5:5-8:8. Generally, the forms contain various types of extraneous information including information about state law rights, a certification that the information on the background questionnaire is correct, and a certification that the employment applicant understands the disclosure form. Additionally, the online disclosure form contained hyperlinks to various Frito-Lay marketing web pages such as "Our Snacks", "Recipes" and "Where to Buy."

### D. Plaintiff's Investigation and Discovery

Prior to and throughout the action, Plaintiff and his counsel thoroughly investigated his claims. Specifically, Plaintiff propounded Interrogatories and Requests for Production of Documents. (Setareh Decl. ¶ 6).

As part of the investigation, Plaintiff's counsel reviewed documents produced by Frito-Lay in order to confirm which forms were used and by whom during the class period. Plaintiffs counsel also reviewed Frito-Lay's background check policies. (Setareh Decl. ¶ 4.) Because this case turns on Frito Lay's legal defense that Frito-Lay's noncompliance was

purportedly not "willful" under the FCRA, Plaintiffs counsel thoroughly analyzed the evolving, and often conflicting case law governing FCRA class actions. All of this review and investigation allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons who were required to use the allegedly unlawful forms. (Setareh Decl. ¶ 5.)

### E. Major Law and Motion Filings in Case

On September 26, 2017, Defendant Frito-Lay filed a motion to compel arbitration. (ECF No. 71.) In an order dated October 17, 2017, this Court directed Plaintiff in opposing the motion to address the applicability of *Morris v. Ernst & Young,* 834 F.3d 975 (9th Cir. 2016). On October 24, 2017, Plaintiff filed an Opposition arguing that the motion was barred by *Morris,* that the arbitration provision at issue could not be applied retroactively (and that the alleged violations occurred before the provision was effective), that the provision was unconscionable, and that Defendant had waived the right to compel arbitration. (ECF No. 28.) Defendant filed a Reply Brief on November 14, 2017. (ECF No. 81).

On September 26, 2017, Defendant Frito-Lay filed a motion to transfer this case to the Eastern District of Texas because Frito-Lay is headquartered in Plano Texas. (ECF No. 72.) Plaintiff filed an Opposition on October 24, 2017 arguing that Defendants have multiple operations in California including the Bay Area and that the interest of justice did not support transfer. (ECF No. 79.) Defendant filed a Reply Brief on November 14, 2017. (ECF No. 80.)

On April 12, 2018 Plaintiff filed a Motion for Preliminary Approval of the settlement. (ECF No. 88.) On April 25, 2018 this Court entered an Order with recommended enhancements to the notice process that the Court wanted the parties to address at the hearing, including email notice and submission of objections and requests for exclusion online  (ECF No. 89). The parties agreed to those enhancements. (ECF No. 93-1.) The Court granted preliminary approval on May 14, 2018. (ECF No. 94.)

### F.  The Parties Engaged in Arm's-Length Settlement Negotiations

The proposed Settlement was the culmination of protracted discussions between the parties following a thorough analysis of the pertinent facts and law at issue.  Following formal discovery, informal discovery and arm's-length negotiations, the parties reached a settlement in

*Chism v. Pepsico, Inc. et al.*                                    Notice of Motion and Motion for Final Approval
                                                                                          of Class Action Settlement

principle on a class basis.    The parties held two mediation sessions with mediator Michael Dickstein. The first was an all-day in person mediation in San Francisco on September 12, 2017.  The second was an all-day mediation which the parties participated in by video-conference on November 16, 2017. (Setareh Dec1.¶¶ 7-8.)

Between the first and second mediations, Defendant filed a motion to compel arbitration and a motion to transfer venue. ECF Nos. 71 and 72. Plaintiff opposed the motions. ECF Nos. 78 and 79. Defendant filed reply briefs on November 14, 2017, two days before the second mediation. The second mediation session resulted in a mediator's proposal which the parties accepted.

### G.    Material Terms of the Proposed Class Action Settlement

#### 1.    The Proposed Settlement Class

The Settlement Class consists of "all applicants for employment in the United States who applied for a job with Frito-Lay North America, Inc. and on whom background checks were conducted during the Covered Periods; [excluding] individuals who were members of a separate class in a prior background check class action, *Roe v. Frito-Lay, Inc.,* 4:14-cv-00751-HSG (N.D. Ca.)" (Settlement Agreement ¶ 1(C.) 'The "Covered Periods" i.e. the class periods are: "(a) for [Frito-Lay] frontline non-exempt positions, the period from January 12, 2015 through November 7, 2016, and (b) for [Frito-Lay] salaried/ exempt positions, the period from January 12, 2015 through December 15, 2016." (Settlement Agreement ¶ 1(K.))    The total number of class members is 38,174. (Declaration of Orlando Castillejos ("Castillejos Decl.") ¶ 2.)

#### 2.    The Settlement Benefits

Under the Settlement, all Class Members who do not opt out will receive an Individual Settlement Payment of at least $40 with a second distribution of the residue from uncashed checks. (Settlement Agreement ¶ 3(K)(c.)

//

//

---

[1]    The Settlement Agreement is attached to the Declaration of Shaun Setareh as Exhibit 1.

### 3. A Narrow Release

Pursuant to the Settlement Agreement, Class Members release their claims as follows:

> [A]ll claims alleged in the Complaint and any known or unknown claims that were or could have been alleged based on the specific facts alleged in the Plaintiffs' Complaint (collectively, the "Released Claims").   This includes claims for (1) Violation of 15 U.S.C.§§ 1681b(b)(2)(A) (Fair Credit Reporting Act); (2) Violation of 15 U.S.C. §§ 1681d(a)(1) and 1681g(c) (Fair Credit Reporting Act); (3) Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act); (4) Violation of  California Civil Code §  1785 et seq.  (Consumer Credit Reporting Agencies Act); (5)  Violation of 15 U.S.C. §1681b(b)(1)(A) (Fair Credit Reporting Act). Released Claims as   defined herein include any claims that were or could have been alleged based on the facts      and/or legal theories addressed in the Complaint and/or related to the current Action,          including ones under the Fair Credit Reporting Act and any state law analogues, including but   not   limited   to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports obtained by FLI, and  adverse action notification (including but not limited to any claims under the Fair Credit Reporting Act,  the  California  Consumer Credit Reporting Agencies Act, the California Investigative Consumer Reporting Agencies Act, California Business & Professions Code section 17200, or any comparable provision of federal, state or local law alleging or arising   out of adverse employment action),   whether  such basis is known or unknown at the time the release is approved by     the Court. The period of the Released Claims shall extend     to the limits of the Covered Periods. The *res judicata* effect of the Final Order and Judgment will be the same as that of the Released Claims.

(Settlement Agreement ¶ 1(Y.))

This release is narrowly and appropriately tailored to the allegations asserted by Plaintiff in this Complaint.

### 4.  A Consumer-Friendly Settlement Payment Distribution Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members.   Class Members will not have to submit a claim form in order to receive payment. Instead, the Individual Settlement Payments will be mailed by First Class Mail to the Settlement Class Members. (Settlement Agreement 'Irlf 3(K)(6), 3(L)(2)(b.)) Settlement Class Members will have 120 days to cash their settlement check. *(Id.)*   The residue from uncashed checks will then be re-mailed to Settlement Class Members who cashed the first checks distributed.   (Settlement Agreement ¶ 3(L)(2)(d)).   Settlement Class Members who receive a second check will have 120 days to cash it. *(Id.)*

**5.       No Reversion to Defendant**

Of the $2,400,000 common fund, no money will revert to the Defendant. Instead, there will be two distributions as set forth above, any remaining residue from uncashed checks will go to United Way or another cy pres recipient to be approved by the Court.  (Settlement Agreement ¶ 3(L)(2)(e))•

**H.       Notice to the Settlement Class and the Class Response**

The settlement administrator sent notice by mail and email to the Settlement Class on June 7, 2018. (Castillejos Declaration 'IrIf 5-6). The settlement administrator also established a case website where Settlement Class members can submit objections and requests for exclusion. *(Id. ¶ 3).* As of the date of this filing, there are three requests for exclusion and zero objections. *(Id.* 'IrIf 9-10).

**III.   ARGUMENT**

**A.       The Court Should Grant Final Approval of the Class Settlement**

**1.       The Standard for Final Approval Has Been Met**

In order to grant final approval of a class action settlement, the district court must determine that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). In making that determination, the district court looks at the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (6) the experienced and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Cotter v. Lyft, Inc.,* 193 F.Supp.3d 1030, 1035 (N.D. Cal. 2016).

As set forth below, all of these factors favor approval, except the seventh factor (presence of a governmental participant) which is neutral.

**2.       The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case**

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).

In assessing the strength of the plaintiffs case and the probability for success, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs likelihood of recovery. *Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleges that Frito-Lay used employment application forms that included both the disclosure form and extraneous information in the same document. Plaintiff contends that Frito-Lay's' use of this document in employment applications facially violates the FCRA, which provides, in relevant part:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) ***a clear and conspicuous disclosure has been made in writing*** to the consumer at any time before the report is procured or caused to be procured, ***in a document that consists solely of the disclosure,*** that a consumer report may be obtained for employment purposes; and (ii) that consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

However, the analysis does not end there.   Plaintiff must also prove that the violation was "willful" under 15 U.S.C. § 1681n(a). In *Safeco Ins. Co. of Am. v. Burr, 551 U .S.* 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.,* 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See, e.g., Shlahtichman v 1-800 Contacts, Inc.,* 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory damages because the violation arose from a "reasonable construction" that the truncation requirement of § 1681 c(g) was inapplicable to

email receipts); *Long v Tommy Hilfiger U.S.A.,* 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

Plaintiff believes that this case is strong on the merits in light of *Syed v. M-I, LLC,* 853 F.3d 492 (9th Cir. 2017) which held that the inclusion of a liability release or other extraneous information in an FCRA disclosure form is a willful violation of the FCRA. But this remains a highly uncertain area of the law and the application of *Syed* by district courts has been inconsistent. For example, a recent decision from the Northern District of California interpreted the holding of *Syed* in an extremely limited manner suggesting that it applies only where the disclosure contains "a broad release of liability for all violations of the FCRA [which has ] the clear, unambiguous and explicit language necessary to effectuate a waiver of all liability." *Marquez v. Bank of America,* 2018 WL 1948864 *5 (N.D. Cal. 2018). The disclosure forms at issue here do not contain a *Syed* type liability release, meaning that under Marquez the claims would not be viable.

By contrast, another recent decision of the Northern District of California agrees with the position asserted by Plaintiff in this case that any extraneous information (not just a *Syed* type liability release) constitutes a willful violation of the FCRA. *Poinsignon v. Imperva, Inc .,* 2018 WL 1709942 *4 (N.D. Cal. April 4, 2018): "The purpose of the solely requirement . . . is to focus the consumer's attention. . . . To permit in the same disclosure document an authorization loaded up with other fine print dilutes the force and clarity of the disclosure mandated by the statute." If *Poinsignon* rather than *Marquez* is followed, Plaintiff and the class would likely prevail on the merits in this case.[2]

It remains unclear what the impact of the Supreme Court's decision in *Spokeo Inc. v. Roberts,* 136 S.Ct. 1540 (2016) is on cases alleging violation of the FCRA's stand alone disclosure requirement. Federal district courts are divided on the impact of *Spokeo* on FCRA

---

[2]  In *Poinsignon,* similar to this case the extraneous information included: "references to state law, a URL link to a privacy policy, an acknowledgment of another document (a summary of rights under FCRA), and an assertion that protected health information could be obtained by way of worker's compensation documents." *Poinsignon supra* at *3.

background check claims. *See Demmings v. KKW Trucking, Inc.,* 2017 WL 1170856 at *10 (D. Or. Mar. 29, 2017) (discussing split in authority). Some courts have dismissed cases for lack of Article III standing rather than remanding those cases to state court. *See e.g., Woods v. Caremark, LLC,* 2016 WL 6908108 (W.D. Mo. 2016).

Also as discussed at more length below Frito-Lay had filed a motion to compel individual arbitration which if granted, would have effectively been the death knell for the class claims. Further Frito-Lay also had filed a motion to transfer venue to the Eastern District of Texas. A change of venue would have had a deleterious effect on the merits of the claims because the *Syed* decision would no longer be binding making it more likely that a court would find that any violation was not willful. *See e.g., Lewis v. Southwest Airlines,* 2018 WL 400775 *4 (N.D. Tex. January 11, 2018) (fmding that extraneous information on form violated FCRA but granting summary judgment on grounds of willfulness).

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.    The Risk, Expense and Complexity of the Case Favor Approval of the Settlement

While this case is not factually complex, the uncertain legal landscape creates a substantial risk of proceeding to certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial without any recovery," given that Frito-Lay would argue that class members incurred no actual damages. *Toys 'IV Us FACTA Litig.,* 295 F.R.D. at 451. On the other hand, Frito-Lay faces catastrophic liability if Plaintiff prevails entirely. This type of "all-or-nothing prospect weighs in favor of approval." *Id.* at 452.

Furthermore, only recently was there substantial litigation on the FCRA, and litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability. *See Torres v. Pet Extreme,* 2015 U.S. Dist. LEXIS 5136, at *14 (E.D. Cal. 2015) (describing an FCRA amendment in 2008 that insulated merchants from liability on printed expiration date on a receipt). Plaintiff thus faces additional "risk that an opinion could issue changing the legal

---

landscape in this relatively new area of statutory law," which favors settlement. *Id.* And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc.,* No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 966 (9th Cir. 2009)).

This case also involved additional risk because of Frito-Lay's pending motion to compel arbitration. Plaintiff argued that the motion was barred by the decision of the Ninth Circuit in *Morris v. Ernst & Young,* 834 F.3d 975 (9th Cir. 2016). However, that decision was reversed by the U.S. Supreme Court in *Epic Systems Corp. v. Lewis,* 138 S.Ct. 1612 (May 21, 2018). Plaintiff made other arguments as well. Plaintiff argued that the arbitration agreement cannot be applied retroactively and that because the background check was done before the arbitration agreement was executed it would be an impermissible retroactive application. ECF No. 78 at 13:18-14:18. *See Morse v. ServiceMaster Global Holdings, Inc.,* 2012 WL 4755035 *5 (N.D. Cal. 2012)(holding that language of arbitration agreement must be "retroactive on its face). However Frito-Lay argued that there is retroactive language because the agreement applies to claims "you may now . . . have against the Company." ECF No. 81 at 3:1-2.

Plaintiff also argued that the arbitration provision was procedurally and substantively unconscionable with multiple substantively unconscionable features including an effectively unilateral attorney fee provision (unilateral because it applies to frivolous claims and not frivolous *defenses),* internal predispute resolution provisions that operate to shorten the statute of limitations , and the ability for the defendant to obtain its attorney fees for moving to compel arbitration. *Id.* at 7:19-10:27. While Plaintiff believes these arguments are strong, such unconscionability arguments have met with mixed success in court. *E.g., Wisely v. Amazon.com, Inc.,* 709 Fed.Appx. 862 *864 (9th Cir. 2017)(rejecting argument that unilateral attorney fee provision in arbitration provision was unconscionable); *Garcia v. Comcast Cable Comunications Management LLC,* 2017 WL 1210044 *2 (N.D. Cal. 2017)(rejecting argument that predispute resolution procedures improperly shortened statute of limitations). *But see Nyulassy v. Lockheed Martin Corp.,* 120 Cal.App.4[th] 1267, 1282 (2004)(internal dispute

resolution procedures were substantively unconscionable); *Bahry v. Montage Marketing LLC,* 2011  WL 181408 *4 (D. Nev. 2011) (one-sided attorney fee provision  substantively unconscionable).

In fact, Plaintiffs counsel has had multiple class action cases that were effectively ended because there was an arbitration agreement and the case was sent to single plaintiff arbitration. (Setareh Decl. ¶ 22).   And, as discussed below, even if the Court denied the motion because it found, for example, that the provision was unconscionable, differing state laws on enforceability of contracts would present an impediment to certification of a nationwide class.

Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation of immediate recovery by way of compromise to the mere possibility of relief, after protracted and expensive litigation." *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 489 (E.D. Cal. 2010). Here, the Settlement delivers immediate recovery for all Settlement Class Members and avoids the risks and expenses of protracted litigation, including potential interlocutory appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the inherent risks of proceeding to... trial and appeal also support the settlement).

### 4.    The Risk of Maintaining Class Status Through Trial Favors Approval of the Settlement

Plaintiff believes that it is highly likely that a class would have been certified in the case at least as to the federal nationwide FCRA claims.   At least three district court decisions have certified such claims.  *Manuel v. Wells Fargo Bank,* N.A., 3:14-cv-00238, ECF No. 95 at 24 (E.D. Va Aug. 19, 2015) ("the legality of the forms is of such a nature that it is capable of class wide resolution and satisfie[s] the commonality requirement") (internal quotation omitted); *Reardon v. ClosetMaid,* 2011 WL 1628041, *6 (W.D. Penn. April 27, 2011) ("Here, there are numerous questions of law or fact common to the class. These include, but are not limited to, whether the forms used by [defendant] to obtain consent to procure a consumer report from the class member violated the FCRA."); *Milbourne v. JRK Residential Am., LLC, No.* 3:12CV861,

---

*Chism v. Pepsico, Inc. et al.*                                    Notice of Motion and Motion for Final Approval
                                                                            of Class Action Settlement

2014 WL 5529731 (E.D. Va. Oct. 31, 2014).

However, the issue of arbitration would have been an impediment to class certification. Even assuming that the motion to compel arbitration would be denied, Frito-Lay could later argue that differing state laws about arbitration (such as contract formation or unconscionability) preclude certification. *See Jabbari v. Wells Fargo & Company,* 2017 WL 5157608 *1 (N.D. Cal. 2017)(J. Chhabria): "Although the Court has doubts about Wells Fargo's continued ability to enforce its adhesive arbitration agreements and class waivers . . . FCRA plaintiffs would face significant risk at the class certification stage even after denial of a motion to compel."

As to the California law background check claims, it is likely that class certification would have been denied because the California statute expressly prohibits class actions for statutory damages.  Cal. Civ. Code § 1786.50(a)(1); *see Espinoza v. Bluemercury, Inc.,* 2017 WL 10799553 *3 (N.D. Cal. 2017)(J. Tigar)(holding that in federal court in a Rule 23 class action this state law limitation applies). Of course, all California class members have claims under the federal statute.

As there is some risk that class status would not have been maintained in the case, particularly in light of the arbitration agreement, this factor supports certification.

**5.     The Amount Offered in Settlement Supports Approval**

Defendant is paying a total settlement amount of $2,400,000. The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential compensatory damages, not including any penalties that might be awarded.  *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.,* 2015 WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties). The class members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. With 38,174 class members, the potential FCRA statutory damages are between $3,817,400 to $38,174,000.

A recent decision from the Northern District used the $100 per violation penalty as the comparator for determining the fairness of an FCRA settlement.  *Leland v. Lagos Stanford Junior University,* 2017 WL 113302 *4 (N.D. Cal. 2017.)

It is reasonable to assume in this case that any jury award would be closer to $100 per violation than to $1000. Plaintiffs counsel is not aware of any standalone disclosure case that has gone to trial and resulted in a jury verdict.  A 2017 jury verdict from the Northern District illustrates the type of case where a verdict close to the maximum $1000 per violation would be likely.  *Ramirez v. Trans Union LLC,*  2017 WL 5153280 (N.D. Cal. 2017) (Order Denying Motion for New Trial). In *Ramirez supra* at *5 the jury awarded statutory damages of $984.22 per class member where the defendant violated 15 U.S.C. § 1681e(b) (which requires credit reporting agencies to use "reasonable procedures to ensure maximum possible accurancy") by falsely identifying the class members as being on the federal government list of "terrorists, drug traffickers and others with whom Americans are prohibited from doing business."

Here, the $2,400,000 non-reversionary settlement amount is 62.87% of the amount that would be awarded if the jury awarded a $100 penalty per violation. The gross settlement amount per class member is $62.87. This compares favorably to recent FCRA settlements in stand-alone disclosure cases.  The highest gross settlement amount per class member that Plaintiff was able to find on Westlaw (searching California federal district courts in the last year) was $147.22 per class member in *Smith v. CheckAmerica, Inc..,* 2017 WL 3610592 (C.D. Cal. July 18,2017) ($400,000 settlement fund, 2717 class members). The next highest was $32.10 per class member in *Feist v. Petco Animal Supplies, Inc.,* 2018 WL 2933485 (S.D. Cal. 2018)($1,200,000 settlement fund, 37,279 class members). The next highest was $7.31 per class member in *In re Uber FCRA Litigation,* 2018 WL 2047362 (N.D. Cal. May 2, 2018) ($7.5 million settlement fund, 1,025,954 class members). The lowest was $3.30 per class member in *Rohm v. Thumbtack Inc.,* 2017 WL 4642409 (N.D. Cal. October 17, 2017) ($225,000 settlement fund, 66,676 class members). Plaintiff's counsel has also been involved in two other FCRA settlements in this district where preliminary or final approval has been granted. In *Burnthorne-Martinez v. Sephora USA, Inc.,*  Case No. 4:16-cv-02843 the gross settlement amount was

*Chism v. Pepsico, Inc. et al.*                                        Notice of Motion and Motion for Final Approval
of Class Action Settlement

$65.60 per class member. In *Garza v. Brinderson Constructors Inc.,* Case No. 15-cv- 05742 the gross settlement amount was $117.02 per class member. (Setareh Decl. I 18-19).

### 6.    The Settlement Was Finalized After a Thorough Investigation

Courts may also consider the extent of discovery and the current stage of the litigation to evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska Partnership,* (9th Cir. 1998), 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.,* Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited because the parties decided to pursue settlement discussions early on.").

Plaintiff engaged in extensive investigation and discovery. *(See* Setareh Decl I 2-6.) Based on this discovery and on their independent investigation and evaluation, Plaintiffs counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by Frito-Lay.

### 7.    The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995).

Plaintiff was represented by experienced class action counsel possessing significant experience in class action matters including significant experience in Fair Credit Reporting Act cases involving allegations that the defendant employer failed to provide a legally compliant

stand-alone disclosure. *(See* Setareh Decl. 'IrIf 17-21.) Likewise, Frito-Lay's counsel Ogletree Deakins is a nationally recognized defense fn̈m. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche,* 2014 WL 439006, at *5 (crediting the experience and views of counsel in approving a settlement resolving automotive defect allegations).

**8.      The Presence or Absence of a Governmental Participant**

There is no governmental participant in this case. Therefore, this factor is neutral. *E.g., Mathein v. Pier 1 Imports (U.S.) Inc.,* 2018 WL 1993727 *8 (E.D. Cal. April 27, 2018): "Because there are no separate governmental participants involved in the action, this factor is neutral in the court's analysis of the settlement agreement."

**9.      The Reaction of the Class is Overwhelmingly Positive**

As of the date of this filing, there are no objections to the settlement and only three requests for exclusion. Therefore, the reaction of the class is overwhelmingly positive. This factor supports approval.

**B.      Conditional Class Certification Is Appropriate for Settlement Purposes**

On May 14, 2018 the Court granted conditional certification of the settlement class. No intervening case law or events provide a basis for disturbing that conclusion.

**C.      The   Court   Should   Award The Requested Attorney Fees,   Expenses, Settlement Administrator Expenses and Class Representative Service Award**

**1.      The Requested Fee Award Is Reasonable**

**a) Applicable Law Regarding Attorneys' Fees**

District courts may award attorneys' fees and costs to a prevailing plaintiff where "(1) fee shifting is expressly authorized by the governing statutes; (2) the [defendant] acted in bad faith or willfully violated a court order; or (3) the successful litigants have created a common fund for recovery or extended substantial benefit to the class." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011.) In the class action context, courts generally

award attorneys' fees and costs pursuant to the common fund or statutory fee-shifting methodologies. *In re Bluetooth,* 654 F.3d at 941.

Where there is a common fund, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002); *In re Bluetooth,* 654 F.3d at 942. The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, because "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.,* 327 F.3d 938, 967 (9th Cir. 2003.) "The common fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lumpsum [settlement] recovered on his behalf." *Id.*

The Ninth Circuit has set a benchmark of 25% of the common fund. Courts award more than the benchmark when justified, considering the following factors: (1) the results achieved; (2) the risk of litigation; (3) any non-monetary benefits produced by the settlement; (4) the range of fee awards in common fund cases of comparable size; and (5) the financial burden assumed by Class Counsel, including contingent risk. *See Vizcaino,* 290 F.3d at 1048-50. In the settlement approval context, the reaction of settlement class members to the requested fee should also be considered. *In re Heritage Bond Litig.,* No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *15 (C.D. Cal. June 10, 2005) ("absence of objections from the class is also a factor in determining the proper fee award"). Although the "usual range" of common fund awards is 20-30%, court regularly award 33.3% or more for cases like this one. *Vizcaino,* 290 F.3d at 1047-50.

While not required, courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Vizcaino,* 290 F.3d at 1050 ("The district court applied the lodestar method as a cross-check of the percentage method.

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by hourly rates. *In re Bluetooth,* 654 F.3d at 941. The lodestar figure is only the starting point for determining an appropriate fee. *Id.; Staton,* 327 F.3d at 965; *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). A court may reduce or enhance the lodestar figure based on several "reasonableness" factors, including the following: (1) the quality of the representation; (2) the benefit obtained for the class; (3) the complexity and novelty of the issues presented; and (4) the risk of non-payment. *In re Bluetooth,* 654 F.3d at 942. The proposed settlement herein creates a common fund of $2,400,000. Each settlement class member who cashes the check mailed to them will receive an ascertainable, pro-rata share of the settlement fund.   The residue from uncashed checks will be distributed in a second distribution to class members who cashed the first check. Any additional money left over will go to a *cy pres* recipient which is proposed to be the United Way.   No money will revert to Frito-Lay. Thus, the common fund doctrine enables the Court to determine a reasonable fee with "some exactitude." *Paul,* 886 F.2d at 271 (internal citation omitted).

Plaintiff seeks a common fund award of $800,000, which amounts to one-third of the $2,400,000 Settlement Fund. As discussed below, this upward adjustment of the benchmark recovery is well supported by the factors set forth by the Ninth Circuit, including: (1) the results achieved; (2) the risk of continued litigation; (3) whether there are benefits to the class beyond the creation of a common fund; (4) the range of fee awards in common fund cases of comparable size; (5) and the financial burden assumed by class counsel, including contingent risk; (6) the reaction of the settlement class; and (7) a lodestar crosscheck. *See Vizcaino,* 290 F.3d at 1048-50; *Burden v. SelectQuote Ins. Servs.,* No. C 10-5966 LB, 2013 WL 3988771, at *4 (N.D. Cal. Aug. 2, 2013).

I/

/I

---

19

### i) The Court Should Award Attorneys' Fees in the Amount of One Third of the Common Fund

The *Vizcaino* factors support an award in the amount of one third of the common fund. First the results achieved are excellent comparing favorably to other recent FCRA cases in the Northern District. The gross settlement amount is $62.87 per class member. Class members will not have to submit a claim form but will be mailed checks directly. By contrast, *Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final approval) involved a claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in a $225,000 settlement or a gross recovery of $3.30 per class member. Similarly, *In re Uber FCRA Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval) involved a claims made settlement (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or a gross recovery of $7.31 per class member.

Second the risks of the litigation, including the high uncertainty regarding the law concerning the FCRA, the risk that if Frito-Lay's conduct was found not to be willful class members would recover nothing, and the substantial risks posed by the motion to compel arbitration and the motion to transfer venue support an upward adjustment. *See Deaver v. Compass Bank,* No. 13-cv-222-JSC, 2015 WL 8526982, at *11 (N.D. Cal. Dec. 11, 2015) (awarding 33% of common fund and concluding that "[Oven the significant challenges Plaintiff would have faced in maintaining this litigation through class certification and trial, the results achieved in this case are very favorable."); *Boyd v. Bank of Am. Corp.,* No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one third of common fund based on significant risk of continued litigation where settlement provided only 36% of potential damages.)

Third, fee awards in cases of comparable size also support an upward adjustment of the benchmark. For example, in the following cases a one third fee was awarded. *Deaver,* 2015 WL 8526982, at *11 (awarding one-third of $500,000 common fund); *Lee v. JPMorgan Chase & Co.,*. Case No. 13-cv-511- JLS, 2015 WL 12711659, at *8-9 (C.D. Cal. Apr. 28, 2015) (awarding 33% of $2.4 million common fund); *Burden,* 2013 WL 3988771, at *5 (33% of

$750,000 common fund); *Barbosa v. Cargill Meat Solutions, Inc.,* 297 F.R.D. 34, 454 (E.D Cal/ 2013) (awarding 33% of $1,290,000 common fund).

Fourth, the contingent nature of the litigation supports the requested fee. -It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d at 1299. By undertaking a class action on a contingency fee basis, counsel not only must turn away other income generating opportunities but must take on the risk of never receiving compensation at all. *Beaver v. Tarsadia Hotels,* No. 11-cv-01842-GPC-KSC, 2017 WL 4310707, at *13 (S.D. Cal. Sept. 28, 2017). A contingent fee must be higher than a fee for the same legal services paid as they are performed because it "compensates the lawyer not only for the legal services he renders but for the loan of those services." *Id.* (quoting *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 580 (2004)). Here, Class Counsel represented Plaintiff and the Settlement Class on a contingency fee basis, with no guarantee of payment. (Setareh Decl. ¶ 25).

Fifth, the reaction of the Settlement Class supports the requested fee. To dates there are no objections and only three requests for exclusion. *In re Heritage Bond Litig.,* 2005 WL 1594389, at *15 ("absence of objections from the class is also a factor in determining the proper fee award").

### ii) A Lodestar Analysis Also Supports The Requested Fee

Class Counsel's lodestar as of July 5, 2018 is $396,112.50. (Setareh Decl. ¶ 24). The hours and hourly rates of the timekeepers on this case are as follows:

| Attorney | Bar Date | Hourly Rate | Hours | Lodestar |
|----------|----------|-------------|-------|----------|
| Shaun Setareh | 1999 | $750 | 251.25 | $188,437.50 |
| Thomas Segal | 2002 | $650 | 242.25 | $159,412.50 |
| Farrah Grant | 2013 | $450 | 96.50 | $43,425 |
| William Pao | 2003 | $450 | 10.75 | $4,837.50 |

(Setareh Decl. ¶ 24). Additional details about the qualifications of these attorneys are set forth in Declaration of Shaun Setareh. (Setareh Decl. ¶ 23).

The above rates are within the range of rates approved by courts in Northern and Southern California for complex class actions, including wage-and-hour actions. *See, e.g., Wang v. Chinese Daily News, Inc.,* 2008 U.S. Dist. LEXIS 123824 at 8-9 (C.D. Cal. filed Oct. 3, 2008) (in a wage-and-hour action, approving 2008 rates of up to $800 per hour), *vacated on other grounds,* 132 S. Ct. 74 (2011); *Rutti,* 2012 WL 3151077 at 11 (in a wage-and-hour action, approving 2012 rates of up to $750 per hour); *Pierce v. County of Orange,* 905 F. Supp. 2d 1017, 1036 & n.16 (C.D. Cal. 2012) (approving 2012 rates of up to $850 per hour); *In re HP Laser Printer Litig.,* 2011 WL 3861703 at 5-6 (C.D. Cal. filed Aug. 31, 2011) (approving rates of up to $800 per hour); *Perfect 10 v. Giganews Inc.,* 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. 2015) (approving 2015 rates of $750 for an 18 year attorney, $640 for a 12 year attorney, and $640 for a 7 year attorney, and $505 for a 3 year attorney); *Stuart v. RadioShack Corp.,* No. C-07-4499, 2010 U.S. Dist. LEXIS 92067, at *16 (N.D. Cal. Aug. 9, 2010) (finding rates ranging between $600 and $1,000 reasonable); *In re Apple Inc. Secs. Litig.,* No. 5:06-CV-05208, 2011 U.S. Dist. LEXIS 52685, at *16 (N.D. Cal. May 17, 2011) (approving hourly rate of $836); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2013 WL 1365900, at *9 (approving hourly rates up to $1000); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.,* No. C 10-02124 SI, 2014 WL 186375, at *2 (N.D. Cal. Jan. 16, 2014) (approving hourly rates up to $850); *Kearney v. American Honda Motor Am.* 2013 U.S. Dist. LEXIS 91636 *24 (approving hourly rates of $650-$800 for senior attorneys in consumer class action); *Holloway v. Best Buy Co.,* C-05-5056-PJH (MEJ) (N.D. Cal.) (approving 2011 partner rates of $825 to $700 an hour).

The requested $800,000 fee is only a 2.02 multiplier over the lodestar amount. This is at the low end of the multiplier range typically applied by district courts. *See, e.g., Bellinghausen v. Tractor Supply Co.* 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); *Hopkins v. Stryker Sales Corp.,* No. 11-CV-02786- LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); *In re TFT-LCD (Flat Panel) Antitrust Litig., 2013 WL 1365900,* at *8 (multipliers ranging on average between 2.4 — 2.6); *Pokorny,* 2013 WL 3790896, at *2 (multiplier of 2.2); *see also Milliron v. T-Mobile USA, Inc.,* 423 F. App'x 131,

135 (3d Cir. 2011) (approving district court's use of 2.2 multiplier); *Di Giacomo v. Plains All Am. Pipeline, Nos.* 99-4137 & 99-4212, 2001 WL 34633373, at \*10-11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re Aremissoft Corp. Sec. Litig.,* 210 F.R.D. 109, 134-35 (D.N.J. 2002) (4.3 multiplier); *Sobel v. Hertz Corp.,* No. 306-CV-00545-LRH-RAM, 2014 WL 5063397, at \*10 (D. Nev. Oct. 9, 2014) (multiplier of 2.0).

The various *Bluetooth* factors support application of a positive multiplier in this case. Here, Class Counsel are highly experienced class action litigators and prevailed against a nationally recognized high caliber defense firm. The results obtained for the class are excellent particularly in light of the risks in the case including the substantial risk posed by the motion to compel arbitration.  Finally, the contingent nature of the action supports an upward adjustment. Therefore, the requested attorneys' fees of $800,000 should be awarded.

## 2.	Plaintiff's Litigation Expenses Should be Reimbursed

Defendant has agreed to pay Class Counsel's litigation expenses in an amount not to exceed $35,000 as part of the settlement out of the Settlement Amount. (Settlement Agreement ¶ L(4)). Prevailing parties may recover as part of statutory attorney fees "litigation expenses when it is the   prevailing practice in the given community for lawyers to bill those costs separately from their hourly rates." *Trs. Of the Constr. Indus and Laborers Health and Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258 (9th  Cir. 2006.) In California, attorneys are reimbursed for out of pocket expenses such as "1) meals, hotels, and transportation; 2) photocopies; 3) postage; 4) filing fees; 5) messenger and overnight delivery; and 6) online legal research." *Johnson v.  General Mills, Inc.,* 2013 WL 3213832 \*6 (C.D. Cal. 2013.) Here, Plaintiff has incurred $24,408.53 in litigation expenses including mediator fees, travel, postage, Westlaw legal research, mileage and parking, PACER, photocopying, and court filing fees and estimates an additional $900 in expenses for travel to the final approval hearing. (Setareh Decl. ¶ 26.) As agreed, Plaintiff seeks an award of $25,308.53 (Plaintiff will submit a declaration if the actual costs are different).

II

---

23

### 3.      The Settlement Administrator's Expenses Should Be Approved

The charges for the Settlement Administrator KCC. are estimated to be $110,000. (Castillejos Decl. ¶ 11). These costs are reasonable and should be approved. (Setareh Decl. ¶ 27).

### 4.      The Court Should Approve An Incentive Award in The Amount of $5,000

Plaintiff requests an incentive award of $5,000. Plaintiff has assisted with the prosecution of the case including providing counsel information about Defendants' policies and practices, assisting counsel in preparing for the mediation, attending the mediation and reviewing settlement and other case documents.   (Declaration of Marcus Chism ("Chism Decl.") ¶ 7.) He undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against him. (Chism Decl. ¶ 8.)[3]  The requested incentive award is reasonable and should be approved.

## IV.    CONCLUSION

The parties have negotiated a fair and reasonable settlement.   Accordingly, Plaintiff moves the Court to grant final approval, award the requested attorney fees and litigation expenses, settlement administrator expenses and incentive award.


                                          Respectfully submitted,

                                          SETAREH LAW GROUP

Dated: July 9, 2018                  BY    */s/ Shaun Setareh*      _____
                                          SHAUN SETAREH
                                          Attorneys for Plaintiff
                                          MARCUS CHISM

---

[3]   In a Google search for "Marcus Chism" four of the top five search results are related to this lawsuit.

*Chism v. Pepsico, Inc. et al.*                          Notice of Motion and Motion for Final Approval
                                                         of Class Action Settlement