# Exhibit 1

SHAUN SETAREH (SBN 204514)
shaun@setarehlaw.com
THOMAS SEGAL (SBN 222791)
thomas@setarehlaw.com
SETAREH LAW GROUP
9454 Wilshire Boulevard, Suite 907
Beverly Hills, CA  90212
Telephone:    (310) 888-7771
Facsimile:    (310) 888-0109

Attorneys for Plaintiff
MARCUS CHISM

THOMAS M. MCINERNEY (SBN 162055)
tmm@ogletree.com
JASON P. BROWN (SBN 266472)
jason.brown@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone:    (415) 442-4810
Facsimile:    (415) 442-4870

STEPHEN R. WOODS, (*pro hac vice*)
stephen.woods@ogletree.com
JAMES R. SILVERS, (*pro hac vice*)
james.silvers@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone:  (864) 271-1300
Facsimile:  (864) 235-8806

Attorneys for Defendant
FRITO-LAY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCUS CHISM, on behalf of himself, all others similarly situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>PEPSICO, INC., a North Carolina Corporation; FRITO-LAY, INC., a Delaware Corporation; FIRST ADVANTAGE BACKGROUND SERVICES CORP.,  a Florida Corporation; and DOES 1 to 100, Inclusive,<br><br>    Defendants. | Case No. 3:17-cv-00152-VC<br><br>**STIPULATION OF SETTLEMENT OF CLASS ACTION AND RELEASE OF CLAIMS**<br><br><br>Complaint Filed: January 12, 2017<br>Before the Hon. District Judge Vince Chhabria |

1      This Stipulation of Settlement of Class Action and Release of Claims is entered into

2   between plaintiff Marcus Chism on behalf of the Class, and defendant Frito-Lay North America,

3   Inc., and any of its or their parents, officers, directors, shareholders, managers, members

4   employees, attorneys, representatives, insurers and their claim managers and each of their

5   successors and assigns ("FLI")

6                                    1.     **DEFINITIONS**

7      A.     "Action" means *Marcus Chism, on behalf of himself, all others similarly situated v.*

8             *PEPSCO, INC. a North Carolina Corporation; Frito-Lay, Inc., a Delaware*

9             *Corporation; FIRST ADVANTAGE BACKGROUND SERVICES CORP., a Florida*

10            *Corporation; and DOES 1 to 100, Inclusive*, filed on January 12, 2017, in the U.S.

11            District Court for the Northern District of California, and assigned Case Number

12            3:17-cv-00152-VC.

13     B.     "Agreement" or "Settlement Agreement" means this Stipulation of Settlement of

14            Class Action and Release of Claims.

15     C.     "Class" or "Class Members" means "all applicants for employment in the United

16            States who applied for a job with Frito-Lay North America, Inc. and on whom

17            background checks were conducted during the Covered Periods; excludes

18            individuals who were members of a separate class in a prior background check class

19            action, *Roe v. Frito-Lay, Inc.,* 4:14-cv-00751-HSG (N.D. Ca.).  There are

20            approximately 38,174 class members, after deducting the *Roe* class members.

21     D.     "Class Counsel" means Shaun Setareh and Thomas Segal of Setareh Law Group.

22     E.     "Class Counsel Award" means such award of fees and costs and expenses as the

23            Court may authorize to be paid to Class Counsel for the services they have rendered

24            and will render to Named Plaintiff and the Class in the Action.  The Class Counsel

25            Award will not exceed Eight Hundred Thousand Dollars ($800,000.00), plus Class

26            Counsel's actual costs and expenses as supported by declaration and not to exceed

27            Thirty Five Thousand Dollars ($35,000.00).

28

F.   "Class Data" means information regarding Class Members that Defendant will in good faith compile from its records and provide to the Settlement Administrator. It shall be formatted as a Microsoft Excel spreadsheet and shall include: each Class Member's employee number; full name; last known address; last known home telephone number; Social Security number, if available, and whether they are subject to the Claims Period applicable for FLI front-line non-exempt employees or for FLI salaried/exempt positions (i.e., whether they are an FLI front-line non-exempt employee or an FLI salaried/exempt employee).

G.   "Class Representative" means Marcus Chism.

H.   "Class Representative Service Awards" means the amount that the Court authorizes to be paid to Named Plaintiff, if appointed Class Representative, that is in addition to his Individual Settlement Payment, in recognition of his efforts and risks in assisting with the prosecution of the Action and in exchange for executing a General Release of Defendant.

I.   "Complaint" means the Second Amended Complaint filed by Named Plaintiff Marcus Chism on July 3, 2017, in this Action.

J.   "Court" means the United States District Court for the Northern District of California.

K.   "Covered Periods" mean (a) for FLI frontline non-exempt positions, the period from January 12, 2015 through November 7, 2016, and (b) for FLI salaried/exempt positions, the period from January 12, 2015 through December 15, 2016.

L.   "Defendant" means FLI.

M.   "Defendant's Counsel" means Thomas M. McInerney, Stephen R. Woods, Jason P. Brown, and James R. Silvers of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

N.   "Effective Date" means: (a) the date when the Final Approval Order is signed, if there are no objectors, or (b) in the event there are objectors, thirty-two (32) days after service of notice of entry of the Final Approval Order and Judgment on the Parties and all objectors to the Settlement, without any appeals or request for review

1    being taken, or (c) orders affirming said Final Approval Order and Judgment or

2    denying review after exhaustion of all appellate remedies, if appeals or requests for

3    review have been taken.

4    O.    "Final Approval" means that the Final Approval Order and Judgment have been

5    entered by the Court.

6    P.    "Final Approval Hearing" or "Final Approval/Settlement Fairness Hearing" means

7    the hearing on the Motion for Final Approval of the Settlement.

8    Q.    "Final Approval Order" means the Order Granting Final Approval of the Class

9    Settlement, which shall be submitted with the Motion for Final Approval of the

10   Settlement.

11   R.    "Individual Settlement Payment" means the amount payable from the Net

12   Settlement Amount to each Settlement Class Member.

13   S.    "Maximum Settlement Amount" means the maximum amount of Two Million, Four

14   Hundred Thousand Dollars ($2,400,000.00) that Defendant will pay as a result of

15   this Stipulation of Settlement.

16   T.    "Named Plaintiff" means Marcus Chism.

17   U.    "Net Settlement Amount" or "NSA" means the Maximum Settlement Amount, less

18   Class Counsel Award, Class Representative Service Awards, and Settlement

19   Administration Costs.

20   V.    "Notice" means the Notice of Class Action Settlement in a form substantially

21   similar to the form attached hereto as **Exhibit 1**.

22   W.    "Parties" means Named Plaintiff and Defendant, collectively and "Party" shall mean

23   either Named Plaintiff or Defendant, individually.

24   X.    "Preliminary Approval Date" means the date the Court enters an order granting

25   preliminary approval of the Settlement.

26   Y.    "Postcard Notice" (or "Postcard Notice of Class Action Settlement") means the

27   notice to be mailed to Settlement Class members in postcard format and

28   substantially similar to the form attached hereto as **Exhibit 2**.

Z.   "Released Claims" means all claims alleged in the Complaint and any known or unknown claims that were or could have been alleged based on the specific facts alleged in the Plaintiffs' Complaint (collectively, the "Released Claims"). This includes claims for (1) Violation of 15 U.S.C.§§ 1681b(b)(2)(A) (Fair Credit Reporting Act); (2) Violation of 15 U.S.C. §§ 1681d(a)(1) and 1681g(c) (Fair Credit Reporting Act); (3) Violation of California Civil Code § 1786 et seq. (Investigative Consumer Reporting Agencies Act); (4) Violation of California Civil Code § 1785 et seq. (Consumer Credit Reporting Agencies Act); (5) Violation of 15 U.S.C. §1681b(b)(1)(A) (Fair Credit Reporting Act). Released Claims as defined herein include any claims that were or could have been alleged based on the facts and/or legal theories addressed in the Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act and any state law analogues, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports obtained by FLI, and adverse action notification (including but not limited to any claims under the Fair Credit Reporting Act, the California Consumer Credit Reporting Agencies Act, the California Investigative Consumer Reporting Agencies Act, California Business & Professions Code section 17200, or any comparable provision of federal, state or local law alleging or arising out of adverse employment action), whether such basis is known or unknown at the time the release is approved by the Court. The period of the Released Claims shall extend to the limits of the Covered Periods. The *res judicata* effect of the Final Order and Judgment will be the same as that of the Released Claims.

AA.   "Released Parties" means Defendant and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

BB.   "Response Deadline" means the date forty-five (45) days after the Settlement
Administrator mails Postcard Notices to Settlement Class Members and the last date
on which Settlement Class Members may submit requests for exclusion or
objections to the Settlement.

CC.   "Settlement" means the disposition of the Action pursuant to this Agreement.

DD.   "Settlement Administration Costs" means the fees and expenses reasonably incurred
by the Settlement Administrator as a result of the procedures and processes
expressly required by this Agreement, which are estimated to be approximately
$ 110,000 based on a not-to-exceed quote from the Settlement Administrator.

EE.   "Settlement Administrator" means KCC, LLC, or such other claims administrator
that is agreed to by the Parties and approved by the Court.

FF.   "Settlement Class Members" or "Settlement Class" means all Class Members after
excluding any person who submits a timely and valid request for exclusion as
provided in this Agreement.

## 2.   **RECITALS**

A. Class Certification.  The Parties stipulate to provisional class certification for purposes of
settlement only.  If the Court does not grant either preliminary or final approval of this
settlement, this provisional class certification shall immediately be set aside and the
Settlement Class immediately decertified (subject to further proceedings on motion of any
party to certify or deny certification thereafter) and this Stipulation of Settlement shall not
constitute or be used as evidence that class certification is appropriate.  If the Court does
not grant either preliminary or final approval of this settlement, the Parties shall be returned
to their respective statuses as of the date and time immediately prior to the execution of the
Stipulation of Settlement, and the Parties shall proceed in all respects as if this Agreement
had not been executed, except that any costs actually incurred by the Settlement
Administrator shall be paid by equal apportionment among the Parties.

B. Procedural History.  On January 12, 2017, plaintiff Marcus Chism filed a putative class
action Complaint in the U.S. District Court for the Northern District of California alleging

various background check-related claims.  On June 1, 2017, plaintiff dismissed without prejudice Pepsico, Inc.  On June 19, 2017, the Court granted the Motion to Dismiss filed by First Advantage Background Corporation.  On July 3, 2017, plaintiff filed his Second Amended Complaint.  On July 19, 2017, plaintiff dismissed without prejudice defendant First Advantage Background Corporation.  On July 31, 2017, defendant Frito-Lay, Inc. filed its answer to the Second Amended Complaint.

C. The Class Representative believes he has meritorious claims based on alleged violations of federal and state law and that class certification is appropriate because the prerequisites for class certification can be satisfied in the Action.

D. Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the Action, disputes the damages and penalties claimed by the Class Representative, and further contends that, for any purpose other than settlement, the Action is not appropriate for class or representative action treatment.  Defendant contends, among other things, that at all times it complied with federal and California law regarding background checks, including but not limited to the claims asserted in the Second Amended Complaint.

E. The Named Plaintiff and Class Representative is represented by Class Counsel.  Class Counsel conducted an investigation into the facts relevant to the Action, including reviewing documents and information provided by Defendant pursuant to formal and informal requests for information to prepare for mediation.  Defendant produced for the purpose of settlement negotiations certain employment data concerning the Class, which Class Counsel reviewed and analyzed.  Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with Defendant is fair, reasonable and adequate, and in the best interest of the Class in light of all known facts and circumstances, including the risks of significant delay, defenses asserted by Defendant, and uncertainties regarding class certification.  Although Defendant denies any liability, Defendant is agreeing to this Settlement solely to avoid the cost of further litigation. The Parties and their counsel have agreed to settle the claims on the terms set forth herein.

F. The Parties participated in two day-long mediations sessions with Michael Dickstein, a

well-respected, third-party mediator with considerable experience in mediating employment class actions, including those asserting background check claims. The mediations resulted in a signed Memorandum of Understanding ("MOU") which, per the terms of the MOU, was to be followed by this long-form settlement agreement.

G.   The Parties believe that the Settlement is fair, reasonable and adequate. The Settlement was arrived at through arm's-length negotiations, taking into account all relevant factors. The Parties recognize the uncertainty, risk, expense and delay attendant to continuing the Action through trial and any appeal. Accordingly, the Parties desire to fully, finally, and forever settle, compromise and discharge all disputes and claims arising from or relating to the Action.

3.   <b>TERMS OF AGREEMENT</b>

A.   <u>Settlement Consideration</u>.  Defendant shall pay the Maximum Settlement Amount which consists of the sum of the Individual Settlement Payments, the Class Representative Service Award, the Class Counsel Award, and the Settlement Administration Costs, as specified in this Agreement.  The Parties agree that this is a non-reversionary Settlement and that no portion of the Maximum Settlement Amount shall revert to Defendant.  In no event shall Defendant be required to pay more or less than the Maximum Settlement Amount.

B.   <u>Release By All Settlement Class Members (including Named Plaintiff)</u>.  As of the Effective Date, in exchange for the consideration set forth in this Agreement, Named Plaintiff and the Settlement Class Members release the Released Parties from the Released Claims for the Covered Period.  Named Plaintiff and the Settlement Class Members may hereafter discover facts or legal arguments in addition to or different from those they now know or currently believe to be true with respect to the claims, causes of action and legal theories of recovery in this case which are the subject matter of the Released Claims, including but not limited to actual damages, statutory damages, and punitive damages, attorneys' fees, costs, expenses, interest, settlement administrator costs, service awards and any other monetary claims.  Regardless, the

discovery of new facts or legal arguments shall in no way limit the scope or definition of the Released Claims, and by virtue of this Agreement, Named Plaintiff and the Settlement Class Members shall be deemed to have, and by operation of the final judgment approved by the Court, shall have, fully, finally, and forever settled and released all of the Released Claims as defined in this Agreement.

C.   General Release By Named Plaintiff Marcus Chism.  As of the Effective Date, in consideration for the consideration set forth in this Agreement, Named Plaintiff, for himself and his heirs, successors and assigns, does hereby waive, release, acquit and forever discharge the Released Parties, from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which exist or may exist on Named Plaintiff' behalf up through the Effective Date, and that relates in any way to Plaintiff's application or employment with Defendant, including but not limited to any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum meruit claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to claims for violation of the Fair Credit Reporting Act, the California Consumer Credit Reporting Agencies Act ,the California Investigative Consumer Reporting Agencies Act, California Business & Professions Code section 17200, the Fair Labor Standards Act, the California Labor Code, the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the Americans with Disabilities Act, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance.  Named Plaintiff hereby

expressly waives and relinquishes any and all claims, rights or benefits that he may have under California Civil Code § 1542, which provides as follows: *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor.* Named Plaintiff may hereafter discover claims or facts in addition to, or different from, those which they now know or believe to exist, but they each expressly agree to fully and finally settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, which exist or may exist arising from or related to Named Plaintiff's application or employment with Defendant. The Parties further acknowledge, understand and agree that this representation and commitment is essential to the Agreement and that this Agreement would not have been entered into were it not for this representation and commitment.

D.   Conditions Precedent: This Settlement will become final and effective only upon the occurrence of all of the following events:

1.   The Court enters an order granting preliminary approval of the Settlement;

2.   The Court enters an order granting final approval of the Settlement and a Final Judgment pursuant to the Settlement Agreement;

3.   The time for appeal of the Final Judgment and Order Granting Final Approval of Class Action Settlement expires; or, if an appeal is timely filed, there is a final resolution of any appeal from the Judgment and Order Granting Final Approval of Class Action Settlement; and

4.   Defendant does not invoke its right to revoke the Settlement as described in paragraph 3(N) herein.

E.   Nullification of Settlement Agreement. In the event that this Settlement Agreement is not preliminarily or finally approved by the Court, fails to become effective, or is reversed, withdrawn or modified by the Court, or in any way prevents or prohibits Defendant from obtaining a complete resolution of the claims as described herein:

1.      This Settlement Agreement shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural;

2.      The conditional class certification (obtained for any purpose) shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and

3.      None of the Parties to this Settlement will be deemed to have waived any claims, objections, defenses or arguments in the Action, including with respect to the issue of class certification.

F.      <u>Certification of the Settlement Class</u>.  The Parties stipulate to conditional class certification of the Settlement Class for the Covered Periods for purposes of settlement only.  In the event that this stipulation is not approved by the Court, fails to become effective, or is reversed, withdrawn or modified by the Court, or in any way prevents or prohibits Defendant from obtaining a complete resolution of the claims as described herein, the conditional class certification (obtained for any purpose) shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

G.      <u>Tax Liability</u>.  Individual Settlement Payments to members of the Settlement Class are not intended by the Parties to be considered wages, and will not be used to calculate any additional benefits under any benefit plans to which they may be eligible, including but not limited to, profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan.  Rather, it is the Parties' intention that this Settlement Agreement will not affect any rights, contributions, or amounts to which any Settlement Class members may be entitled under any benefit plans.  Notwithstanding the above,

Settlement Class Members understand and agree that they will be responsible for the payment of any taxes and penalties assessed by any taxing authority on the Individual Settlement Payments described herein.

H.   Circular 230 Disclaimer. Each Party to this Agreement (for purposes of this section, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other Party or any attorney or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party, and (3) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

I.   Preliminary Approval Motion. At the earliest practicable time, Plaintiffs shall file with the Court a Motion for Order Granting Preliminary Approval and supporting papers, which shall include this Settlement Agreement. Class Counsel shall provide a copy of the draft Motion for Order Granting Preliminary Approval to Defendant's Counsel at least seven (7) business days in advance of filing with the Court, to allow for Defendant's review and edits.

J.    <u>Settlement Administrator</u>. The Settlement Administrator shall be responsible for: printing and mailing the Notice Packets to the Settlement Class Members as directed by the Court; receiving and reporting the objections and requests for exclusion; processing and mailing payments to the Class Representative, Class Counsel, and Settlement Class Members; providing declaration(s) as necessary in support of preliminary and/or final approval of this Settlement; and other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform. The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities. The Settlement Administrator will contract with Class Counsel only; Defendant and Defendant's Counsel are not parties to any contracts or agreements with the Settlement Administrator. Accordingly, Class Counsel, not Defendant or Defendant's Counsel, will be responsible for any issues, errors, or omissions with/by the Settlement Administrator.

K.    <u>Notice Procedure</u>.

    1.    <u>Class Data.</u> No later than fourteen (14) calendar days after the Preliminary Approval Date, Defendant shall provide the Settlement Administrator with the Class Data for purposes of preparing and mailing Postcard Notices to Class Members. The Class Data shall be confidential. The Settlement Administrator shall not provide the Class Data to Class Counsel or Named Plaintiffs or any third party, or use the Class Data or any information contained therein for any purpose other than to administer this Settlement.

    2.    <u>Notices</u>.

        a)    The Long Form Notice of Class Action Settlement shall be in a form substantially similar to the form attached hereto as **Exhibit 1**. The Postcard Notice shall be in a form substantially similar to the form attached hereto as **Exhibit 2.** The Postcard Notice of Class Action Settlement shall include the estimated amount of their Individual Settlement Payment if they do not request to be excluded from the

Settlement. The Postcard Notice of Class Action Settlement shall also inform Settlement Class Members that in order to receive an Individual Settlement Payment, they do not need to do anything except keep the Settlement Administrator apprised of their current mailing addresses. The Postcard Notice will direct the Settlement Class Members to the settlement website for the Long Form Notice which will be posted there. The Long Form Notice of Class Action Settlement shall set forth the release to be given by all members of the Class who do not request to be excluded from the Settlement Class in exchange for an Individual Settlement Payment.

3.   Notice By First Class U.S. Mail. Upon receipt of the Class Data, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct any known or identifiable address changes. No later than fourteen (14) calendar days after receiving the Class Data from Defendant as provided herein, the Settlement Administrator shall mail a postcard notice to all Settlement Class Members via regular First Class U.S. Mail. The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Settlement Class Member. The address identified by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Settlement Class Member.

4.   Undeliverable Notices. Any Postcard Notices returned to the Settlement Administrator as non-delivered on or before the Response Deadline shall be re-mailed to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address by lawful skip-tracing, or other search using the name, address and/or Social Security number of the Settlement Class Member involved, and shall then perform a re-mailing, if another mailing

address is identified by the Settlement Administrator. Settlement Class Members who received a re-mailed Postcard Notice shall have their Response Deadline extended fifteen (15) days from the original Response Deadline.

5. Disputes Regarding Administration of Settlement. Any disputes not resolved by the Settlement Administrator concerning the administration of the Settlement will be resolved by the Court under the laws of the State of California. Prior to any such involvement of the Court, counsel for the Parties will confer in good faith to resolve the disputes without the necessity of involving the Court.

6. No Claim Form Required. Class Members are not required to submit a claim form to receive an Individual Settlement Payment. The Postcard Notice of Class Action Settlement shall state that Settlement Class Members who wish to receive Individual Settlement Payments need not do anything except to keep the Settlement Administrator apprised of a current mailing address in order to receive an Individual Settlement Payment check following the Effective Date of the Settlement.

7. Exclusions. The Postcard Notice shall state that Class Members who wish to exclude themselves from the Settlement must submit a written request for exclusion by the Response Deadline. The Postcard Notice will direct Class Members to the settlement website for specific instructions on how to request exclusion. Those instructions will indicate that the written request for exclusion must state that the Class Member wishes to exclude himself or herself from the Settlement and (1) must contain the name, address, telephone number and the last four digits of the Social Security number of the person requesting exclusion; (2) must be signed by the Class Member; (3) must be postmarked or fax stamped by the Response Deadline and returned to the Settlement Administrator at the specified address or fax

telephone number; and (4) contain a typewritten or handwritten notice stating in substance: "I have read the enclosed Notice and I wish to Opt Out of the class action and the Settlement of the case: *Marcus Chism v. PEPSICO, INC., et al.,* U.S. District Court for the Northern District of California Case No. 3:17-cv-00152-VC." The request for exclusion will not be valid if it is not timely submitted, if it is not signed by the Class Member, or if it does not contain the name and address of the Class Member. The date of the postmark on the return mailing envelope on the request for exclusion shall be the exclusive means used to determine whether the request for exclusion was timely submitted. Any Class Member who requests to be excluded from the Settlement Class will not be entitled to any recovery under the Settlement and will not be bound by the terms of the Settlement or have any right to object, appeal or comment thereon. Class Members who fail to submit a valid and timely written request for exclusion on or before the Response Deadline shall be bound by all terms of the Settlement and any final judgment entered in this Action if the Settlement is approved by the Court. No later than fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall provide counsel for the Parties with a final list of the Class Members who have timely submitted written requests for exclusion. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage members of the Class to submit requests for exclusion from the Settlement.

8. Objections. The Postcard Notice will inform Class Members of their right to object and will direct them to the settlement website for instructions on how to object. . The settlement website shall state that Class Members who wish to object to the Settlement must file with the Court a written statement of objection ("Notice of Objection") by the Response Deadline. The Notice of Objection must be signed by the Class Member and state: (1) the full name

of the Class Member; (2) the dates of employment of the Class Member; (3) the last four digits of the Class Member's Social Security number and/or the Employee ID number; (4) the basis for the objection; and (5) if the Class Member intends to appear at the Final Approval/Settlement Fairness Hearing. Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement although the Court will excuse defects if there is substantial compliance. Class Members who submit a timely Notice of Objection will have a right to appear at the Final Approval/Settlement Fairness Hearing in order to have their objections heard by the Court. No Class Member may appear at the Final Approval/Settlement Fairness Hearing unless he or she has served a timely objection that complies with the procedures provided in this paragraph although the Court may excuse this requirement upon a showing of good cause or if there is substantial compliance. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to file or serve written objections to the Settlement or appeal from the Order and Final Judgment. Class Members who submit a written request for exclusion are not entitled to object to the Settlement.

L.     Funding and Allocation of the Maximum Settlement Amount. Defendant is required to pay the Maximum Settlement Amount, which includes the sum of the Individual Settlement Payments, the Class Representative Service Award, the Class Counsel Award, and the Settlement Administration Costs.

1.     Funding Due Date. No later than five (5) business days after the Effective Date, Defendant shall provide the Maximum Settlement Amount to the Settlement Administrator to fund the Settlement, as set forth in this Agreement.

2.    Individual Settlement Payments.  Individual Settlement Payments shall be paid from the Net Settlement Amount and shall be paid pursuant to the formula set forth herein.

a)    Calculation of Individual Settlement Payments.  Individual Class Members will receive a minimum cash payment in the gross amount of $40.00.  Irrespective of the actual payment to each member of the Settlement Class, in no event will the Maximum Settlement Amount exceed $2,400,000.00.  To calculate the Individual Settlement Payment that each Individual Class Member will receive, the Settlement Administrator will divide the Net Settlement Amount by the number of non-returned (i.e., non-undeliverable) Postcard Notices, and then distribute the checks to each individual Settlement Member on whom a Postcard Notice has not been returned, as described in the subsection just below.

b)    Mailing.  Individual Settlement Payments shall be mailed by regular First Class U.S. Mail to Settlement Class Members' last known mailing address no later than fourteen (14) calendar days after the Effective Date.

c)    Expiration.  Any checks issued to Settlement Class Members shall remain valid and negotiable for one hundred and twenty (120) days from the date of their issuance.  In the event an Individual Settlement Payment check has not been negotiated within one hundred and twenty (120) days, the check shall be voided

d)    Second Distribution. Within thirty (30) days of the 120-day check void date, Settlement Administrator will assess whether there is any residue from uncashed checks.  Any residue from uncashed checks will first be applied to satisfy any shortfall, if there is one, between

the attorney fee award and the initial payout as set forth in subsection (f) below. In the event that the remaining funds associated with voided checks equal or exceed $40,000, within twenty (20) days of the assessment of any residue, class members who cashed the first check will be mailed a second check with their pro rata share of the excess funds. Any checks not negotiated within one hundred and twenty days of mailing shall be voided. In the event that the remaining funds associated with voided checks are less than $40,000 they will be transmitted to *cy pres* recipient United Way or another *cy pres* recipient designated by the Court.

e)   Any funds associated with such voided checks following Second Distributions plus any accrued interest that has not otherwise been distributed shall be transmitted to *cy pres* recipient United Way or another *cy pres* recipient to be designated by the Court. The Settlement Administrator shall prepare a report regarding the distribution plan, including and not limited to the unused funds as set forth in this Section, in accordance with the Court's orders.

f)   As set forth above, the Settlement requires that each Settlement Class Member who does not opt out receives a minimum net payment of $40.00. If the Settlement Administrator's pre-distribution calculations show that, after deduction of the Class Representative Service Award, the Class Counsel Award, and the Settlement Administration Costs, the minimum payment will be less than $40.00, then the initial payment of any Class Counsel Award will be reduced in an amount necessary to ensure that each Settlement Class Member receives a check for $40.00. If, as described above, there is a residue from uncashed, expired checks and the initial payment of the Class Counsel Award was reduced from the amount awarded by

the Court, then the residue from uncashed, expired checks will be applied in the amount of the reduction in a subsequent attorney fee payment, to be paid on the same date the residue is scheduled to have been paid to the Settlement Class members who cashed the first check.  If there is no residue, there will be no subsequent attorney fee payment.

3.    Class Representatives Service Awards.  Defendant agrees not to oppose or object to any application or motion by Named Plaintiff for a Class Representative Service Award of up to Five Thousand Dollars ($5,000.00) to the Named Plaintiff.  The Settlement Administrator shall pay the Class Representative Service Award to Named Plaintiffs from the Maximum Settlement Amount no later than fourteen (14) calendar days after the Effective Date.  Any portion of the requested Class Representative Service Award that is not awarded to the Class Representatives shall be part of the Net Settlement Amount and shall be distributed to Settlement Class Members as provided in this Agreement.  The Settlement Administrator shall issue an IRS Form 1099 — MISC to the Named Plaintiff for his respective Class Representative Service Award.  The Parties` intent is that the Service Award shall be treated for tax withholding purposes as non-wage income.  Notwithstanding the foregoing, Named Plaintiff shall be solely and legally responsible to pay any and all applicable taxes on his respective Class Representative Service Award ).  The Class Representative Service Award shall be in addition to Named Plaintiff's respective Individual Settlement Payment as a Settlement Class Member.  In the event that the Court reduces or does not approve the requested Class Representative Service Award, Named Plaintiff shall not have the right to revoke the Settlement, and it will remain binding, subject to Named Plaintiff's right to appeal.

4.     Class Counsel Award.  Defendant agrees not to oppose or object to any application or motion by Class Counsel for attorneys' fees not to exceed $800,000.00, plus costs and expenses supported by declaration not to exceed $35,000.00, from the Maximum Settlement Amount.  Any portion of the requested Class Counsel Award that is not awarded to Class Counsel shall be part of the Net Settlement Amount and shall be distributed to Settlement Class Members as provided in this Agreement.  The Settlement Administrator shall pay the Class Counsel Award to Class Counsel from the Maximum Settlement Amount no later than fourteen (14) calendar days after the Effective Date.  Class Counsel shall be solely and legally responsible to pay all applicable taxes on the payment made pursuant to this paragraph. The Settlement Administrator shall issue an IRS Form 1099 — MISC to Class Counsel for the payments made pursuant to this paragraph.  In the event that the Court reduces or does not approve the requested Class Counsel Award, Named Plaintiffs and Class Counsel shall not have the right to revoke the Settlement and the Settlement will remain binding, subject to Named Plaintiffs' and Class Counsel's right to appeal.

5.     Settlement Administration Costs.  The Settlement Administrator shall be paid for the costs of administration of the Settlement from the Maximum Settlement Amount.  Settlement Administration Costs presently are estimated to be no more than $ 110,000 .  The Settlement Administrator shall be paid the Settlement Administration Costs no later than fourteen (14) calendar days after Defendant provides funds to the Settlement Administrator for disbursement under this Agreement.

M.     Final Approval Motion. At the earliest practicable time following the expiration of the Response Deadline, Named Plaintiffs shall file with the Court a Motion for an Order Granting Final Approval and Entering Judgment, which motion shall request final approval of the Settlement and the amounts payable for the Class

1    Representatives Service Awards, the Class Counsel Award, and the Settlement

2    Administration Costs.

3          1.    Declaration by Settlement Administrator. The Settlement Administrator

4          shall submit a declaration in support of Named Plaintiffs' motion for final

5          approval of this Settlement detailing the number of Postcard Notices mailed

6          and re-mailed to Class Members, the number of undeliverable Postcard

7          Notices, the number of timely requests for exclusion, the number of

8          objections received, the amount of the average Individual Settlement

9          Payment, the Settlement Administration Costs, and any other information as

10         the Parties mutually agree or the Court orders the Settlement Administrator

11         to provide.

12   N.    Defendant's Option to Terminate Settlement. Defendant has the unilateral right to

13         terminate the Settlement if, after the Response Deadline and before the Final

14         Approval/Settlement Fairness Hearing, the number of Settlement Class Members

15         who submitted timely and valid written requests for exclusion from the Settlement is

16         at least ten percent (10%) of all Class Members, Defendant shall have, in its sole

17         discretion, the option to terminate this Settlement. If Defendant exercises the option

18         to terminate this Settlement, Defendant shall provide written notice to Class Counsel

19         within seven (7) calendar days after the Response Deadline (provided that is at least

20         five (5) calendar days after Defendant learns of this percentage of valid opt-outs);

21         and the Parties shall proceed in all respects as if this Agreement had not been

22         executed.

23   O.    Motions for Preliminary and Final Approval. Class Counsel will provide an

24         opportunity for Counsel for Defendant to review the Motions for Preliminary and

25         Final Approval prior to filing with the Court by providing drafts to FLI's counsel at

26         least seven business days before it is filed. The Parties and their counsel will

27         cooperate with each other and use their best efforts to effect the Court's approval of

28         the Motions for Preliminary and Final Approval of the Settlement.

P.  Cooperation.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  If the Court rejects the Parties' proposed Release and Settlement Agreement, the Parties agree to work in good faith to resolve any differences they may have regarding any revised Release and Settlement Agreement to be re-submitted to the Court, and if the Parties are unable to resolve any such differences on their own, the Parties further agree to engage a mediator for the purposes of helping the parties to resolve any disputes about the terms and conditions of any revised Release and Settlement Agreement to be re-submitted to the Court.

Q.  Interim Stay of Proceedings.  The Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval/Settlement Fairness Hearing to be conducted by the Court.

R.  Amendment or Modification.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

S.  Entire Agreement.  This Agreement and any attached Exhibits constitute the entire Agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in the Agreement and its Exhibits.

T.  Authorization to Enter Into Settlement Agreement.  Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The persons signing this Agreement on behalf of Defendant represent and warrant that they are authorized to sign this Agreement on behalf of Defendant. Named Plaintiffs represent and warrant that they are authorized to sign this Agreement and that each of

them has not assigned any claim, or part of a claim, covered by this Settlement to a third-party.

U.   Binding on Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

V.   California Law Governs.  All terms of this Agreement and the Exhibits hereto and any disputes arising hereunder shall be governed by and interpreted according to the laws of the State of California.

W.   Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves copies or originals of the signed counterparts.

X.   This Settlement Is Fair, Adequate and Reasonable.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of this Action and have arrived at this Settlement after extensive arms-length negotiations, taking into account all relevant factors, present and potential.

Y.   Jurisdiction of the Court.  The Parties agree that the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

Z.   Invalidity of Any Provision.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

AA.  Publicity.  Named Plaintiffs and Class Counsel agree not to disclose or publicize the Settlement, including the fact of the Settlement, its terms or contents, and the

negotiations underlying the Settlement, in any manner or form, directly or indirectly, to any person or entity, except Class Members and as shall be contractually required to effectuate the terms of the Settlement as set forth herein. For the avoidance of doubt, this section means Named Plaintiffs and Class Counsel agree not to issue press releases or website postings, communicate with, or respond to any media or publication entities, publish information in manner or form, whether printed or electronic, on any medium or otherwise communicate, whether by print, video, recording or any other medium, with any person or entity concerning the Settlement, including the fact of the Settlement, its terms or contents and the negotiations underlying the Settlement, except as shall be contractually required to effectuate the terms of the Settlement as set forth herein. However, for the limited purpose of allowing Class Counsel to prove adequacy as class counsel in other actions, Class Counsel may disclose the name of the Parties in this action and the venue/case number of this action (but not any other settlement details) for such purposes. In addition, in response to inquiries from third parties, the Parties and their counsel may respond as follows: "The parties reached an amicable resolution" and may refer the inquirer to the public records of this action on file with the Court. The Parties may also discuss the terms of the settlement with members of the Settlement Class. The exceptions to the Publicity Provision outlined herein are to be strictly construed and do not authorize any disclosures other than those specifically identified. Except to the extent required for Court approval, and except that FLI may disclose such information to its employees, counsel, advisors, shareholders and company representatives who FLI believes have a need to know the specific terms of the settlement, the Parties agree to maintain confidentiality as to the specific terms of the settlement until such times as it is submitted to the court for approval.

BB.   No Unalleged Claims. Class Counsel agrees that they know of no facts that could lead to a background check lawsuit or allegations against FLI other than the Action. The Parties further acknowledge, understand and agree that this representation is

1      essential to the Agreement and that this Agreement would not have been entered into

2      were it not for this representation.

3      CC.    No Admissions.  Named Plaintiffs have claimed and continue to claim that the

4             Released Claims have merit and give rise to liability on the part of Defendant.

5             Defendant claims that the Released Claims have no merit and do not give rise to

6             liability.  This Agreement is a compromise of disputed claims.  Nothing contained in

7             this Agreement and no documents referred to herein and no action taken to carry out

8             this Agreement may be construed or used as an admission by or against the

9             Defendant or Named Plaintiffs or Class Counsel as to the merits or lack thereof of

10            the claims asserted.

11     IN WITNESS WHEREOF, this Settlement Agreement is executed by and on behalf of the

12     Settling Parties and their duly authorized attorneys, as of the day and year herein set forth.

13     DATED: _____, 2018             SETAREH LAW GROUP

14
                                          By: */s/ Shaun Setareh*_____
15                                            SHAUN SETAREH
                                              THOMAS SEGAL
16
                                          Attorneys for Plaintiff
17                                        MARCUS CHISM

18     DATED: _____, 2018             OGLETREE, DEAKINS, NASH, SMOAK &
                                          STEWART, P.C.
19

20                                        By: */s/ Thomas M. McInerney*_____
                                              THOMAS M. MCINERNEY
21                                            JASON P. BROWN
                                              STEPHEN R. WOODS
22                                            JAMES R. SILVERS

23                                        Attorneys for Defendant
                                          FRITO-LAY, INC.
24

25

26

27

28

                                          25                    Case No. 3:17-cv-00152-VC
       STIPULATION OF SETTLEMENT OF CLASS ACTION AND RELEASE OF CLAIMS

DocuSign Envelope ID: D01F61E2-030C-4A93-A556-2A8D1DC004C0

1   DATED: 4/12/2018 ,2018           By: _____
                                                  DocuSigned by:

2                                          Plaintiff: MARCUS CHISM

3

4

5   DATED_____, 2018          By: _____

6                                          Authorized Signature of Frito Lay Inc.

7                                                  Aida Babalola

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          26              Case No. 3:17-cv-00152-VC
                    STIPULATION OF SETTLEMENT OF CLASS ACTION AND RELEASE OF CLAIMS

1    DATED:_____,2018                    By:_____

2                                                  Plaintiff: MARCUS CHISM

3

4

5    DATED April  12  , 2018                  By:_____

6                                             Authorized Signature of Frito Lay Inc.

7                                                      Aida Babalola

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28